[No. 27237.   Department One.   July 27, 1939.]

WENATCHEE PRODUCTION CREDIT ASSOCIATION, *Respondent,* v. PACIFIC FRUIT & PRODUCE COMPANY, *Appellant,* GEORGE D. BROWN & SON *et al., Respondents.*[1]

[1]Reported in 92 P. (2d) 883.

*Patterson & Patterson,* for appellant.

*Crollard & O'Connor,* for respondent Wenatchee Production Credit Association.

ROBINSON, J.—This action was brought to foreclose three mortgages, but the real contest is not between

the mortgagee and mortgagor, but between the mortgagee and a third party.

The facts are somewhat complicated. The plaintiff, Wenatchee Production Credit Association (hereinafter called the association), is an entity created under the farm credit act of 1933, U. S. C. A., Title 12, § 1131 *et seq.*, for the purpose of financing the agricultural operations of its members by means of loans secured by crop mortgages. George D. Brown & Son (hereinafter referred to as Brown) owned orchard properties, and the association financed their operation in 1935. The ultimate result of that financing, after the 1935 crop had been sold and accounted for, was that Brown owed the association $13,018.71. Before that amount had been determined, the matter of financing the 1936 operations became current.

The Pacific Fruit & Produce Company (hereinafter referred to as Pacific Fruit) is a corporation engaged in the business of marketing fruit and agricultural products as commission merchant and factor, and, as such, had acted as Brown's marketing agent for a number of years. In April, 1936, it held $52,500 of bonds secured by a trust mortgage on one of Brown's orchards, a deed to Brown's warehouse and cold storage equipment, and all of Brown's capital stock, to secure Brown's indebtedness of $125,000. This indebtedness as shown by contract between the parties of March 6, 1936, was payable in installments beginning January 1, 1937, and ending June 30, 1942. Under that contract, Pacific Fruit had the right to market Brown's crops so long as any part of the indebtedness remained unpaid.

In making its arrangements to finance Brown's 1936 operations, the plaintiff association induced, and procured, Pacific Fruit to execute the following agreement on a form which it (the association) prepared. The instrument is called a "standby agreement."

"April 6, 1936

"To WENATCHEE PRODUCTION CREDIT ASSOCIATION,
Wenatchee, Washington.

"It is our understanding that you have made crop production loans to Geo. D. Brown & Son and the Central Washington Investment Company, and are contemplating making additional loans to Geo. D. Brown & Son to produce the 1936 crop. To secure such loans, we understand that they will be required to give a first mortgage on all of their crops, personal property, machinery and equipment, located or raised on the two ranches in Chelan County, known as the Geo. D. Brown and Central Washington Investment Company ranches, in an amount not to exceed Fifty Thousand Dollars ($50,000.00).

"In order to assist Geo. D. Brown & Son to obtain the 1936 crop loan, we agree that any lien which we have now or may obtain during the life of your mortgage against their personal property, machinery, equipment and crops, located or grown on the above mentioned ranches, will be considered junior and inferior to that lien which you have now or may take on such property to secure your entire loans, above mentioned.

"We further agree that we will not disturb them in the possession of either their real or personal property for a period not to exceed one year from this date.

"PACIFIC FRUIT & PRODUCE COMPANY, INC.
By J. A. MEADE
(Affix Seal)                     Vice-President."

On April 8, 1936, the association took a mortgage on Brown's 1936 crop and the machinery used to produce it, to secure (1) the unpaid balance of $26,347.53 on the 1935 loan (later reduced from the 1935 crop sale to $13,018.71), and (2) the sum of $41,000, or so much thereof as might be advanced in 1936. This is the first of the three mortgages sought to be foreclosed in this action.

On December 22, 1936, the respondent, having advanced the amount stipulated in the April mortgage,

took a supplemental crop mortgage on the 1936 crop to secure additional loans of not to exceed nine thousand dollars. This mortgage also included the production machinery. This was the second of the two crop and chattel mortgages sought to be foreclosed in this action, and, under these two mortgages, $49,964.74 was advanced. This sum, plus the $13,018.71, carried over from 1935, represents the maximum indebtedness covered by the two mortgages.

As additional security for the indebtedness carried over from 1935, the association had taken a mortgage from Brown on August 15, 1936, on ten acres of land, not a part of the orchard property with respect to which the crop mortgages were given. This is the third of the mortgages sought to be foreclosed.

The Wenatchee Valley Production Credit Association, an organization of the same kind as the plaintiff, and with nearly the same name, had acquired a subsequent and junior mortgage upon portions of the mortgaged property. The individual defendants were guarantors or indorsers upon the various obligations which the mortgages secured.

Upon the maturity of Brown's 1936 crop, the Pacific Fruit & Produce Company took charge of it, marketed it, and collected the proceeds, amounting to $74,738.27. It deducted all selling charges, commissions, and expenses, amounting to $11,955.30, leaving a net balance of $62,782.97. It remitted to the association, to apply on its mortgages, or otherwise applied for its benefit, $49,122.42, and refused to surrender the balance of $13,660.55, claiming the right to apply that sum to Brown's indebtedness to it, for reasons which will hereinafter appear.

The association, on the theory that its mortgage lien on the crop followed and attached to the proceeds thereof, made the Pacific Fruit a party to this action,

alleging that its refusal to surrender the proceeds constituted a conversion of the sum withheld. It appears, from language in the opinion in *German-American State Bank v. Seattle Grain Co.,* 89 Wash. 376, 154 Pac. 443, that it could properly so proceed; and, as we understand the matter, the appellant does not contend otherwise.

The Pacific Fruit contended that (1) Brown was insolvent in 1936, and that it was its principal creditor; (2) that, by contract with Brown, it had a lien on the crop which Brown might produce; (3) that, independent of that, under the ordinary rules of common law, it had a factor's lien on the crop, after it got possession of it; (4) that the standby agreement, hereinbefore quoted, constituted a contract in which the association agreed, in effect, (a) that it would not create a mortgage lien against the crop for more than fifty thousand dollars, and (b) that whatever lien it would create on the 1936 crop, over and above security for the 1935 carry-over, would be for moneys advanced to produce that crop.

Reasoning from these premises, Pacific Fruit argued, and now contends, that, upon turning over to the association fifty thousand dollars of the proceeds of the 1936 crop, it had the right to retain the balance. It also contended that the advances secured by the December mortgage were not advanced to produce the 1936 crop, but were supplied after the crop had been produced and harvested. It further contended that, in any event, the association should be required to exhaust its security before resorting to Pacific Fruit's personal liability; this to be accomplished by selling the property on execution.

The association contended that, in the standby agreement, it merely secured assurance from Pacific Fruit of two things: (1) that Pacific Fruit would not inter-

fere with Brown's possession for a period of one year; and (2) that, if Pacific Fruit had any lien on the crop and machinery, or should afterwards acquire any, it would concede the priority of the association's lien up to fifty thousand dollars. It contended that the instrument contained no agreement on its part to restrict its advances to fifty thousand dollars, and, in fact, that it did not contain any agreement on its part to do anything. It denied that Pacific Fruit had a lien on the crop, either by contract or by common law, and, accordingly, contended (a) that no question of priority of liens was involved, and (b) that no occasion was presented to which the doctrine of marshaling of assets was applicable.

The trial court held with the association on all of these points in an oral decision which is brought up as part of the statement of facts. A decree was entered granting judgment against Brown and the individual defendants for $14,913.39, and against Pacific Fruit for $13,693.80; any amount collected from Pacific Fruit to be credited upon the judgment against Brown and the individual defendants. The doctrine of marshaling of assets was applied in favor of the Wenatchee Valley Production Credit Association, which held a second mortgage, but it was not applied in favor of Pacific Fruit, because the court held that it had no lien of any kind either on the mortgaged crop or on the proceeds thereof. From this judgment, the Pacific Fruit appeals, making the same contentions here which it made in the lower court.

It is evident that the first question involved is the construction of the standby agreement. It was prepared by the association and follows a standard form used by it. The appellant invokes the rule that the fact that the instrument was not signed by the association does not prevent its being a contract (*Palmer &*

*Co. v. Chaffee,* 129 Wash. 408, 225 Pac. 65); also, the rule that ambiguities in an instrument should be resolved against the party who prepared it (*Stephenson v. Kenworthy Grain & Milling Co.,* 186 Wash. 114, 56 P. (2d) 1301); and the rule that, in construing a written instrument, that construction will be favored which gives effect to all provisions of the instrument as against one which renders some of them meaningless or ineffective (*Hollingsworth v. Robe Lumber Co.,* 182 Wash. 74, 45 P. (2d) 614).

After a careful consideration of the standby agreement, and with these rules in mind, we are of the opinion that it was correctly construed by the trial court. Considered as a bare instrument, it was nothing more than an offer. It did not bind the association to make any advance to Brown or to do anything.

When the association made its mortgage loans, however, certain reciprocal obligations arose between the parties. Pacific Fruit became bound (1) not to disturb Brown's possession for one year from the date of the instrument, and (2) to acknowledge the priority of the association's mortgage lien as against any lien it had on April 6, 1936, or might afterwards acquire on the same property, up to the sum of fifty thousand dollars, provided that sum was made up of the $13,018.71 carryover from 1935 and advances for the production of the 1936 crop. The association, on its part, in acting on the offer, by making the advancements and taking the mortgages, impliedly agreed that it would insist on a priority of no more than fifty thousand dollars as against any lien the Pacific Fruit then had, or might afterwards acquire, on the same property; and, as we understand the matter, it has in no way sought to repudiate that obligation, but simply says that the fruit company had no lien on April 6, 1936, and acquired

none thereafter, and, therefore, it is entitled to enforce its own liens in full.

Under the construction which we have made of the standby agreement, if it be true that the fruit company had no lien on the crops and machinery at the time the agreement was executed, and acquired none thereafter, then it is of no consequence whether or not the advances secured by the December mortgage were made after the crop was produced and harvested. No question of priority is presented if Pacific Fruit has no liens.

Furthermore, Pacific Fruit could have no right to demand a marshaling of the assets unless it had a lienable claim against them. A creditor who has no lien upon assets cannot demand that they be marshaled as against one who has. 18 R. C. L. 458, § 6. In *Shoemaker v. White-Dulaney Co.*, 131 Wash. 347, 230 Pac. 162, 232 Pac. 695, on which the appellant relies, it will be noted that the marshaling took place at the instance of a junior mortgagee.

Did Pacific Fruit have any lien upon the Brown crop and machinery covered by the association's mortgages? In its answer, Pacific Fruit set up that it had a lien upon the 1936 crop in excess of its entire value, and

"That said lien arises out of the provisions of exhibit 'A' hereof, and out of the further fact that the possession of the 1936 apple crop of the defendant George D. Brown & Son, a corporation, was delivered to this answering defendant prior to December 1, 1936."

Exhibit "A" is a very elaborate contract and chattel mortgage between Brown and Pacific Fruit, executed on August 14, 1933, in which the 1933 crop of apples of Brown's orchard is mortgaged to Pacific Fruit, and it is appointed Brown's marketing agent. The lan-

guage relied upon to establish a lien is, apparently, the following:

"(13) Pacific shall have a lien upon all the produce of grower in its possession and upon all proceeds of sales of grower's produce for all amounts becoming due from grower whether arising out of this contract or otherwise."

"(17) Unless terminated in writing by either party on or before March 31, 1934, Pacific's employment as agent and factor shall apply to succeeding crops; provided, that so long as grower is indebted to Pacific, or Pacific is contingently liable for grower's account, this contract shall continue in effect and shall cover succeeding crops, and grower will execute a similar contract and chattel mortgage on such crops upon demand of Pacific."

But this instrument, if it continued in effect until 1936, could not, of itself, constitute or create a chattel mortgage lien upon the 1936 crop; for such a mortgage would not be valid if made prior to November 30, 1935. Rem. Rev. Stat., § 3779 [P. C. § 9759], subd. (5). At the most, it could be only a contract to give a chattel mortgage. There is no evidence that any was given.

Furthermore, there is a well-authenticated letter among the exhibits in the case, dated April 4, 1934, addressed to Wenatchee Production Credit Corporation and signed by Pacific Fruit, the last paragraph of which reads as follows:

"As a further consideration for your financing the 1934 crop of George D. Brown &·Son, we hereby release said George D. Brown & Son from any obligation they might have to market their fruit through us through any marketing contract with us signed prior to this date."

■ Moreover, a study of the contract made between Brown and Pacific Fruit on March 6, 1936, convinces us that it supersedes all former contracts

between the parties. It is a very elaborate and comprehensive instrument of eleven pages. It recites that Brown owes Pacific Fruit one hundred twenty-five thousand dollars, secured by certain bonds, by a deed to a storage warehouse, and by Brown's entire capital stock. It provides for the payment of the indebtedness in installments of three thousand dollars on each January 1st, from 1937 to 1942, inclusive, with balance payable on June 30, 1942. It also provides that Brown will annually furnish Pacific Fruit a statement of receipts and disbursements, taxes, and water assessments in connection with the operation of its orchard and the crops produced upon the lands therein described, and that,

". . . after deducting from the net income from the said crops the sum of $3000.00 to be paid Pacific as aforesaid, that out of the balance of the net income it will pay to Pacific 90% thereof to further apply upon said indebtedness, the remaining 10% to be used by Brown in liquidation of its now existing liabilities to others. The first statement shall be rendered on June 1, 1937, and any additional payment made at that time, and statements, shall thereafter be rendered on the first day of June of each succeeding year to and including June 30, 1942. Pacific shall have the right, until the indebtedness covered hereby is fully paid, to market and store the crops grown upon the real estate described in paragraph 5 hereof for the same compensation to it as currently received by it from its other customers and upon the same terms. The obligation of this paragraph shall constitute a covenant running with the land above described."

This instrument, which, it will be noted, was executed about a month before the execution of the standby agreement, seems to cover all the business relationships between the parties with reference to Brown's crops, and nowhere does it provide for any

crop mortgage or crop lien to secure the one hundred and twenty-five thousand dollars indebtedness.

■ It is, of course, true that Pacific Fruit acquired a factor's lien on the 1936 crop when it was delivered to it to be marketed; but the record shows that all of its commissions and expenses of every kind and character, connected with the production and sale of that crop, were paid in full. Its factor's lien was, therefore, wholly discharged, unless it covered the one hundred twenty-five thousand dollars prior indebtedness. To hold that it did, would lead to extraordinary consequences.

On March 6, 1936, Pacific Fruit took security from Brown for that indebtedness, consisting of a pledge of $52,500 of bonds secured by trust mortgage on Brown's orchard, a deed to Brown's warehouse and cold storage plant, and a pledge of all Brown's corporate stock. In that instrument, it was agreed that Pacific Fruit should have the right to market Brown's crop until the indebtedness should be extinguished. None of it was due when the standby agreement was executed, for the first payment was stipulated for January 1, 1937, the last for June 30, 1942. Suppose A loans Brown sixty thousand dollars to produce the 1940 crop. In the fall of 1940, Brown, as obligated to do, turns over the possession of the crop to Pacific Fruit for marketing. Brown still owes it upwards of one hundred thousand dollars. Is Pacific Fruit's factor's lien on the 1940 crop limited to its commission and expenses in connection with the marketing of that crop, or can it claim a lien on the crop for the additional one hundred thousand dollars? If it can, Brown, in making the 1936 agreement, in effect, placed a one hundred twenty-five thousand dollar lien upon its crops for an indefinite number of years to secure a pre-existing debt, although it could not have legally created

a mortgage lien for more than a year in advance, even to secure a new indebtedness.

Furthermore, the appellant is claiming a possessory factor's lien on the 1936 crop to secure an indebtedness not yet due and payable; for, by the terms of the March 6, 1936, agreement between Brown and appellant, no part of the one hundred twenty-five thousand dollars became due and payable until January 1, 1937.

We are of the opinion that the Pacific Fruit's factor's lien on the 1936 crop was limited to security for the commissions and expenses connected with the handling of that crop. *German-American State Bank v. Seattle Grain Co.*, 89 Wash. 376, 154 Pac. 443. See, also, Jones on Liens (3rd ed.), § 449.

There is some contention made that no evidence was submitted as to the value of the goods at the time of conversion. The action was not brought on the theory that the crop was converted. The association conceded the right of Pacific Fruit to dispose of the crop. The action was for the conversion of the proceeds, amounting to $13,660.55; hence, no evidence of the value of the thing converted was required.

The judgment and decree entered by the trial court is affirmed.

BLAKE, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.