[No. 34507. Department One. November 28, 1958.]

ROBERT WISE, JR., *Respondent*, v. WILLIAM FARDEN *et al.*,
*Appellants.*[1]

[1]Reported in 332 P. (2d) 454.

*William C. Harrison*, for appellants.

*Robert L. Bell*, for respondent.

HUNTER, J.—This is an appeal from a judgment awarding damages to the plaintiff, Robert Wise, Jr., in an action

brought by him against the defendants, William Farden and wife, for breach of contract.

William Farden, who will be referred to herein as though he were the sole defendant (appellant), has operated and published the "Outdoor Empire News," a weekly fishing and hunting publication for sportsmen of the northwest, since April 1, 1954. By November 4, 1954, the paper had thirty-five hundred subscribers. On that date, the defendant who had been looking for someone to build up the sales and circulation of the newspaper entered into a ninety-day contract with the plaintiff, whereby the plaintiff acquired limited responsibility for the circulation of the newspaper.

During the first sixty days of this contract, the plaintiff sold approximately seven hundred seventeen new subscriptions at three dollars a subscription, from which he was to receive two dollars and the defendant, one dollar. On February 4, 1955, the ninety-day contract expired automatically. Thereafter, the plaintiff continued to work under the same contract terms, but without a written contract.

On March 10, 1955, the parties entered into their second written agreement, a "Circulation and Sales Contract," under the provisions of which the plaintiff was granted an exclusive franchise (as that term is used in the business) to all the sales and circulation within a prescribed area, until December 31, 1955, "unless it is further continued by written agreement of the parties."

April 8, 1955, the defendant orally informed the plaintiff that the franchise was cancelled due to violation of several sections of the contract. The following day, upon demand by the plaintiff, written notification of the cancellation was given. Although the typewritten letter did not state any specific sections that the plaintiff allegedly violated, there appeared on the face of the letter a notation in pencil listing three contract sections. These will be discussed hereinafter.

Thereafter, the plaintiff commenced this action for damages in the amount of $11,123.32, alleging the defendant had wrongfully and unlawfully terminated the contract.

The defendant denied that he wrongfully terminated the contract or that the plaintiff had suffered any damage. By way of affirmative defense, he alleged that the plaintiff had not performed the contract and *had requested* cancellation thereof; that the plaintiff had sold "subfranchises" for profit without authorization, in violation of the terms of the contract. Defendant filed a cross-complaint for twelve hundred dollars, which he alleged the plaintiff had misappropriated, and for thirty-six dollars, the amount of two n.s.f. checks given him by the plaintiff.

The case was tried to the court. At the conclusion of the trial, the court found: (1) the plaintiff had an exclusive franchise for the sale and circulation of defendant's weekly newspaper; (2) the termination and cancellation of the contract by the defendant was intentional, wrongful and an unlawful breach of the contract; (3) the plaintiff duly performed all of the terms, conditions and agreements of the contract; (4) that the plaintiff was entitled to $3,279.49 in damages for "accounts receivable, new subscriptions and renewals." (The court arrived at this figure by fixing damages and reducing the amount by $1200 and $36, the amount of the prayer in the defendant's cross-complaint.) Thereafter, the trial court, in accordance with its findings, entered conclusions of law and judgment in favor of the plaintiff. This appeal by the defendant followed.

Appellant first assigns as error the failure of the trial court to grant his motion for dismissal at the close of the respondent's case.

■ After the trial court denied the challenge to the sufficiency of the evidence, the appellant elected not to stand on his motion, and proceeded to present evidence on his own behalf. Therefore, he waived his motion to dismiss. *State v. Thomas*, 52 Wn. (2d) 255, 324 P. (2d) 821 (1958); *Hinz v. Lieser*, 52 Wn. (2d) 205, 324 P. (2d) 829 (1958); *Hector v. Martin*, 51 Wn. (2d) 707, 321 P. (2d) 555 (1958), and cases cited therein.

Appellant's remaining assignments of error are principally directed against the findings of fact, conclusions of law and

the judgment entered by the trial court; requested findings and conclusions refused.

■ We announced the rule in *Croton Chemical Corp. v. Birkenwald*, 50 Wn. (2d) 684, 314 P. (2d) 622 (1957), that where the findings of fact and judgment of the trial court are supported by the record, this court will not overturn them on appeal. This rule has been followed in *Fancher v. Landreth*, 51 Wn. (2d) 297, 317 P. (2d) 1066 (1957); *Bremerton School Dist. 100-C v. Hibbard*, 51 Wn. (2d) 226, 317 P. (2d) 517 (1957); *Fischler v. Nicklin*, 51 Wn. (2d) 518, 319 P. (2d) 1098 (1958); *Gilliland v. Mount Vernon Hotel Co.*, 51 Wn. (2d) 712, 321 P. (2d) 558 (1958); *Hendricks v. Dahlgren*, 52 Wn. (2d) 108, 323 P. (2d) 658 (1958); *Kuyath v. Anderson Constr. Co.*, 52 Wn. (2d) 174, 324 P. (2d) 264 (1958); *Hinz v. Lieser, supra.* With this rule in mind, we have reviewed the record.

■ The evidence is clear that the respondent had a valid and subsisting contract with the appellant when it was cancelled by the appellant without notice. Therefore, when the respondent commenced this action, the burden was upon the appellant to establish, under his affirmative defense, that the respondent had breached the contract, thereby justifying cancellation within the terms of their written agreement.

The letter written by the appellant, upon demand of the respondent, confirming the oral cancellation *of the contract of March 10, 1955*, was dated *April 9, 1955.* As previously stated, the typewritten portion thereof did not recite any specific reasons for the termination; however, the appellant upon request penciled thereon the numerals II-C, IV and VII, having reference to paragraphs of the contract. These paragraphs provide:

(1) II-C. That payments due the publisher [appellant] were "payable by the *10th day of the next succeeding month.*"

(2) IV. "Bob Wise [respondent] will procure a Bond in the amount of $1000.00 indemnifying publisher [appellant] against loss arising from any obligation of Bob Wise under

this contract. *Publisher will bear the cost of the bond premium.*"

██ VII. "The minimum production of subscriptions, *computed on any three month period,* shall not be less than 150 subscriptions a week. In Computing this figure renewals sold during 1955 shall not be used." (Italics ours.)

██ It is obvious from the language of the contract itself that, on the date of the cancellation, the respondent could not have breached paragraphs II-C or VII. Appellant's contention that there was an anticipatory breach is contrary to the findings of the trial court which are supported by the record. Further, there is testimony that the respondent, in an attempt to comply with the requirement of paragraph IV, obtained an application for a bond but that the appellant refused to pay the premium. Therefore, cancellation of the agreement was not justified upon any of the reasons given at the date of termination.

██ In his answer and during the trial, the appellant contended that the contract was terminated by mutual agreement. Suffice it to say, the appellant clearly failed to sustain the burden of proving this contention.

The appellant next contends that the respondent, by the sale of separate subfranchises to Fred Smith and Francis Johnson, delegated his authority without authorization in violation of the contract and, therefore, cancellation was proper.

 In construing a written contract, the basic principles which must be applied are: (1) the intention of the parties must control; (2) intent must be ascertained from reading the contract *as a whole,* and (3) that where language used is unambiguous, an ambiguity *will not* be read into the contract. *Dixon v. Gustav,* 51 Wn. (2d) 378, 318 P. (2d) 965 (1957); *Hering v. St. Paul-Mercury Indemnity Co.,* 50 Wn. (2d) 321, 311 P. (2d) 673 (1957). However, where the language of a contract is ambiguous or susceptible of more than one meaning, it is the duty of the court to search out the intent of the parties by viewing the contract *as a whole* and considering all of the circumstances surrounding the transaction, including the subject-matter

and the subsequent acts of the parties. *Boeing Airplane Co. v. Firemen's Fund Indemnity Co.*, 44 Wn. (2d) 488, 268 P. (2d) 654, 45 A. L. R. 984 (1954).

The trial court at the conclusion of the trial stated:

"Before you [the attorneys] make any statements, I am going to tell you the basis I will determine this case on. It does have some legal complexities, *due largely to what construction should be placed upon* what has been called *the franchise agreement* between Mr. Wise and Mr. Farden. I think *there can be no question but what there is considerable ambiguity and there is a direct conflict in the testimony here as to the understanding that these parties had as to the legal effect of this circulation contract. . . .*" (Italics ours.)

▮ From our careful reading of the contract, *as a whole*, we agree with the trial court's remarks that it is ambiguous. Thus, since it was drawn by the attorney for appellant (not the attorney on this appeal), we must resolve the ambiguities against the appellant. See *Wenatchee Production Credit Ass'n v. Pacific Fruit & Produce Co.*, 199 Wash. 651, 92 P. (2d) 883 (1939); *State Bank of Wilbur v. Phillips*, 11 Wn. (2d) 483, 119 P. (2d) 664 (1941). See, also, *Fischler v. Nicklin, supra*; 12 Am. Jur. Contracts 795, § 252.

Under the subfranchises executed by the respondent to Smith and Johnson, he retained virtually the same control over them as was retained by the appellant over him. Respondent testified, prior to the March 10, 1955 contract, the appellant was present when a proposal was discussed for expanding the sales organization by a method of subfranchises. Further, Mr. Smith testified that he discussed his contemplated purchase of a subfranchise with Mrs. Farden (who was a business partner of the appellant) sometime prior to the execution of the agreement.

Although the trial judge indicated in his remarks at the close of the trial that he considered both parties somewhat at fault in their negotiations with each other, and that he was going to determine the case "more or less" on the theory of unjust enrichment, he went on to hold:

". . . So I reach the conclusion that as of the contract, Mr. Farden [appellant] and Mr. Wise entered into

on the 10th of March, that *there was a breach of that contract by Mr. Farden;* and to the extent that Mr. Wise [respondent] has been damaged, Mr. Farden will have to respond. . . ." (Italics ours.)

Findings of fact and conclusions of law, to which error has been assigned, were entered in accordance with the court's view that the appellant had breached the contract when he cancelled the respondent's franchise.

■ Considering the contract in its entirety and the ambiguity inherent therein when so construed, the circumstances surrounding the transaction, the nature of the business, the conduct of the parties in reference thereto, and the evidence presented at trial, we are satisfied that the record supports the trial court's finding that appellant breached the contract. The appellant failed to sustain the burden of proving his affirmative defense, that cancellation was warranted or justified by reason of various alleged contract violations by the respondent. Although some of these alleged violations have not been discussed herein, they have been considered and have been found to warrant no further comment than that they were insufficient to justify the appellant's action.

The damages allowed the respondent as a result of the wrongful termination of the contract by the appellant were carefully considered by the trial judge and were limited to loss of income from accounts receivable and for loss of commissions on new subscriptions and renewals.

■ In *Platts v. Arney,* 50 Wn. (2d) 42, 309 P. (2d) 372 (1957), we said:

"The purpose of awarding damages for breach of contract is neither to penalize the defendant nor merely to return to the plaintiff that which he has expended in reliance on the contract. It is, rather, to place the plaintiff, as nearly as possible, in the position he would be in had the contract been performed. He is entitled to the benefit of his bargain, *i.e.,* whatever net gain he would have made under the contract. [citations omitted]

"The plaintiff is not, however, entitled to more than he would have received had the contract been performed. If the defendant, by his breach, relieves the plaintiff of duties

under the contract which would have required him to spend money, an amount equal to such expenditures must be deducted from his recovery. [citations omitted]"

In the instant case, the trial court found:

"That because of defendants' wilful, intentional, unlawful and wrongful breach of said contract plaintiff suffered the following damages:

"a. $1,081.74 for the loss of payment from renewal of 4217 subscriptions that plaintiff would have sold prior to December 31, 1955.

"b. $1,272.50 for the loss of payment from new subscriptions that plaintiff would have sold from March 10, 1955, to December 31, 1955.

"c. $961.25 for accounts receivable that were on the books and were due and owing to plaintiff on the date the contract was terminated.

"That plaintiff by admission agreed that he was indebted to defendant in the sum of approximately Twelve hundred and no/100 ($1200.00) Dollars by virtue of a prior employment agreement with defendant; and that in arriving at the terms to be allowed recovered by plaintiff, as set forth above, this $1200.00 offset was taken into consideration in connection therewith and is therefore now cancelled out by the findings of the above sums to be recovered by plaintiff. That plaintiff owes Defendant Thirty-six and no/100 ($36.00) Dollars for two non-sufficient fund checks which sum should be deducted from the total recovery allowed plaintiff."

The total amount of the judgment entered was $3,279.49, with costs allowed respondent.

■ Appellant argues that the damages awarded were based on speculation and conjecture. We do not agree. The above finding is supported by the record. If any party were in a position to complain about the method used by the trial court in calculating damages it would be the respondent, who did not appeal, and not the appellant.

The appellant further contends that the trial court erred when it denied his motion for a new trial.

■ The rule is well established that the granting or denial of a motion for a new trial is within the sound discretion of the trial court, and that this court will not inter-

vene unless it can be shown that the trial court manifestly abused its discretion. *Coats v. Lee & Eastes, Inc.*, 51 Wn. (2d) 542, 320 P. (2d) 292 (1958); *Skov v. MacKenzie-Richardson, Inc.*, 48 Wn. (2d) 710, 296 P. (2d) 521 (1956).

From our review of the record, we find no abuse of discretion.

Since there is evidence in the record to support the findings and judgment of the trial court, it must be affirmed.

It is so ordered.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.

January 15, 1959. Petition for rehearing denied.

[1]Reported in 332 P. (2d) 47.