[No. 34973.   Department One.   December 3, 1959.]

*In the Matter of the Estate of* JAMES L. NAPIER, *Deceased.*

BERTHA M. TEMPLIN, *Appellant*, v. THE NATIONAL BANK OF COMMERCE OF SEATTLE *et al.*, *Respondents.*[1]

[1]Reported in 347 P. (2d) 192.

*Allen, DeGarmo & Leedy*, for appellant.

*Taylor & Taylor*, for respondents.

HUNTER, J.—This is a consolidation of two proceedings: (1) a hearing upon objections filed in the probate of the estate of James L. Napier, deceased, and (2) an action for the cancellation of certain written instruments. Both proceedings were instituted for the purpose of preventing a transfer of the one-half community interest of the surviving spouse of the decedent to the National Bank of Commerce of Seattle, as trustee of the trust established by the decedent's last will and testament and codicil thereto.

Mrs. Bertha M. Templin (formerly Bertha M. Napier) married James L. Napier on March 5, 1907. Four children

were born as a result of this marriage. Mr. Napier worked as a station agent and telegraph operator until 1925, at which time he went into the real-estate and insurance business. He met with business failure and disappointment until 1935 when his fortune took a remarkable turn and, by 1945, he had accumulated assets of approximately $138,000. On August 2, 1945, he executed a will wherein a trust was created providing for the sum of $150 per month to be paid to his wife during her lifetime. She was also to be given the family home, furniture, and family automobiles. The trustee named in the will was directed at its discretion to pay her additional sums, providing:

" . . . It is my desire that my wife receive generous treatment at the hands of the Trustee, due consideration being given to her station in life, the comforts to which she is accustomed, and resources otherwise available to her."

In addition to the monthly payments, the will provided that, following her death, the trust estate be divided into four equal parts; one part for each of the four children of the parties.

On the same day the will was executed, Mrs. Napier signed an agreement to convey her community share of the estate to the trust immediately upon Mr. Napier's death. The agreement provided:

"WHEREAS my husband, James L. Napier, has executed his Last Will and Testament dated the 2nd day of August, 1945, by the terms of which he has, dependent upon certain conditions, devised and bequeathed the residue of his estate to THE NATIONAL BANK OF COMMERCE OF SEATTLE as Trustee, the terms of said Trust providing that I am to receive certain benefits as therein provided; and

"WHEREAS it is my desire that all of the community property now owned or hereafter acquired by my husband and myself (except the family home and other property described in my husband's will as excepted from the trust therein created) shall be managed as a unit;

"Now THEREFORE, I do hereby agree in consideration of the benefits provided for me in my husband's will that if my husband shall predecease me and shall not have cancelled the aforesaid will but shall leave same in full force and effect, and if the provisions in his will relative to the

creation of a trust for my benefit become operative and effective by the terms thereof, I will immediately transfer and convey to THE NATIONAL BANK OF COMMERCE OF SEATTLE, as Trustee, all my right, title and interest in and to any and all community property owned by my said husband and myself at the time of his death, except the family home and other property as described in my husband's will as to be excepted from the trust therein created. Said property shall be transferred to said bank as Trustee to be held by it under the terms of the trust created by my husband's will, or a similar trust.

"I further agree to execute and deliver to said bank as trustee all proper instruments, transfers and conveyances necessary to transfer said property to said bank as aforesaid.

"In Witness Whereof I have hereunto set my hand and seal this *2nd* day of August, 1945."

Mr. Napier executed a codicil in 1949, unknown to Mrs. Napier, to increase her allowance from the trust to $300 per month. Again, Mr. Napier confirmed that the welfare of his wife was to be the first consideration of the trustee, and that additional funds be provided for her care and support, as may be necessary, out of the income or principal of the trust estate.

The year after the codicil was executed, Mr. Napier entered a rest home as a mental patient. The National Bank of Commerce of Seattle was named guardian of his guardianship estate in the year 1950, continuing in this capacity until his death in 1955.

In May of 1950, Mrs. Napier requested a family allowance by signing a petition in the guardianship proceeding. In the same petition, she set out the size of the estate as approximately $268,000 gross, and $200,000 net. Later, in 1953, she petitioned the court to set up an educational fund in the amount of $32,000 for her grandchildren, from the guardianship estate, which was granted. At that time, the assets of the estate were considered. On July 15, 1955, eight days following Mr. Napier's death, Mrs. Napier executed two quitclaim deeds conveying her one-half community interest to the National Bank of Commerce of Seattle, as trustee, excepting therefrom the home, furnishings, bonds, and fam-

ily cars. These deeds were prepared and presented to her by the attorney for the executor without Mrs. Napier's request. On the same day, she petitioned for and was awarded a family allowance of $600 per month.

In July of 1956, approximately a year after her husband's death, Mrs. Napier married a Mr. Templin. At that time, Mr. Templin was thirty years of age, and Mrs. Napier was approximately seventy years of age. They lived in California after the marriage, and Mrs. Templin continued to receive the family allowance of $600 per month from the estate. Mr. Templin earned some money but, for the most part, his efforts were directed toward missionary work, for which he received no compensation.

In 1958, Mrs. Templin was informed that her monthly allowance would be reduced from $600 to $300 per month, when the trust would become effective upon the closing of the estate. For the first time, she announced her dissatisfaction with the trust, and shortly thereafter, an action was commenced for the purpose of setting aside her agreement of 1945 and canceling the quitclaim deeds executed after Mr. Napier's death. Objections were filed in the probate to the distribution of her community interest to the National Bank of Commerce, as trustee under the will. These proceedings were consolidated. At the trial, Mrs. Templin testified she had changed her mind about the trust and wanted to use her property for travel and missionary purposes. The court dismissed the action, overruled the objections, and entered a final decree directing that Mrs. Templin's community interest be distributed to the trustee and that the trust be administered as provided in the will. From the above order and decree, Mrs. Templin has appealed.

Appellant's assignments of error go primarily to the failure of the trial court to enter a decree canceling the two quitclaim deeds transfering her one-half interest in the community estate to the trustee under the trust established by the will and codicil; and to the court's distribution of her community interest to the trustee.

The appellant first contends that at the time she was requested to sign the deeds prepared by her fiduciary's

attorney, she had no knowledge or understanding of either the value or extent of her property in the estate. The appellant testified she had a limited education; her husband handled all of the real-estate business, never discussing with her their business affairs; he handled all of the finances, even to the extent of taking care of most of the daily requirements for the household; and that deeds necessary for the business operations were executed by her in blank. The record, however, shows the appellant did know the value of the estate, as disclosed by her petition for a family allowance in the guardianship proceedings in 1950; and that she was further aware of its approximate value, as disclosed in her petition in 1953 for an educational fund to be established for her grandchildren from the guardianship estate. This evidence supports the trial court's finding, contrary to appellant's contention.

Appellant contends she did not understand the meaning of a "trust" or the legal effect of the quitclaim deeds, due to her limited education and lack of business knowledge. She testified she had the impression that by placing her share in trust at the bank she could get back what she wanted when she asked for it, as in the case of a savings account.

■ The evidence discloses that although the appellant had only a fifth grade education she had taken some correspondence courses; she had acquired some nurses' training; she attended Broadway High School in 1946, and in 1947 she attended Seattle Pacific College as a special student, receiving a B grade in English; and during the years 1942, 1943, and 1944, she worked in her husband's real-estate office in the limited capacity of answering the telephone. The court observed from her conduct on the witness stand that she had an excellent command of the English language, and appeared to be intelligent and mentally alert. Under these circumstances, the trial court properly concluded the appellant understood the clear and express language contained in the trust provisions of the will, of which she had knowledge in 1945, and as contained in the codicil, of which she was aware at the time of her husband's death; and to

further conclude she knew the purpose and effect of the execution of the quitclaim deeds.

The appellant's counsel argues, however, it is inconceivable that the appellant understood the consequences of transferring her property to the bank when, by so doing, her support was reduced from $600 to $300 per month, particularly when the income from her one half of the community estate alone would approximate $375 per month. This argument fails to consider that the $300 per month does not limit the amount appellant can obtain from the trust, but limits the discretion of the trustee by fixing the minimum which the appellant is to be paid from the trust; that the will expressly provides she be paid *sums in addition* for her comfort, commensurate with her station in life; that she receive *generous treatment*; and that the trustee is directed to invade the corpus to provide for her if necessary. It would be difficult to conclude from this mandate to the trustee that Mrs. Templin would receive less than the sum of $600 per month from the trust, when that amount had been adjudicated in the guardianship proceeding to be reasonably necessary for her support.

We will not overturn the findings of the trial court where, as in this case, they are supported by substantial evidence in the record. *Wise v. Farden*, 53 Wn. (2d) 162, 332 P. (2d) 454 (1958).

Appellant asserts it is admitted by the respondent executor that the appellant's agreement of 1945 is unenforcible, and therefore contends it was the executor's duty, as a fiduciary, to disclose this to the appellant. We see no issue raised by the unenforcibility of the agreement. Nor do we see the necessity for the appellant to be advised of its unenforcibility, since appellant voluntarily executed the deeds after a period of ten years during which time she was able to consider the consequences of so doing. We find no evidence of breach of duty or overreaching by the respondent executor in this case.

The appellant contends the trustee was not sufficiently identified in the quitclaim deeds by the language "National Bank of Commerce of Seattle, Trustee," and that

extrinsic evidence may not be used to establish the intention of the parties, citing *Davidson v. Mantor*, 45 Wash. 660, 89 Pac. 167 (1907), and *Belcher v. Young*, 90 Wash. 303, 155 Pac. 1060 (1916). These cases deal with the creation of a trust and are not applicable. In the instant case, the deeds do not create a trust but convey property to the trustee of an established trust, who may be identified by extrinsic evidence. See *York v. Stone*, 178 Wash. 280, 34 P. (2d) 911 (1934).

The foregoing disposition of this case makes it unnecessary to consider the appellant's remaining assignments of error.

The trial court was correct in its dismissal of the appellant's action, and in overruling the objections to the distribution of her community interest to the trustee of the trust established by the will of her deceased husband.

The judgments are affirmed.

WEAVER, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.