In re BRAZIER FOREST PRODUCTS, INC., Brazier Forest Products of Oregon, Inc., Brazier Forest Industries, Inc.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation, Appellant,

v.

FORT VANCOUVER PLYWOOD COMPANY, a Washington corporation, Appellee.

No. 89–35424.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1990.

Decided Dec. 12, 1990.

**222**

Richard L. Lambe, Ulin, Dann & Lambe, Seattle, Wash., for appellant.

Lynn C. Tuttle, Hatch & Leslie, Seattle, Wash., for appellee Rainier Nat. Bank.

Charles J. Pruitt, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for appellee Fort Vancouver Plywood Co.

Before WRIGHT, POOLE and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Brazier Forest Products, Inc. and Brazier Forest Industries, Inc. ("Brazier") are lumber manufacturers. To finance its operations, Brazier obtained loans from appellee Rainier National Bank ("Rainier"), and gave Rainier security interests in its accounts receivable.

The United States Forest Service ("USFS") owned the land on which Brazier acquired timber cutting rights. Brazier paid the USFS a set amount for the timber it cut on Forest Service land. The contracts between Brazier and the USFS permitted the posting of payment bonds to qualify as payment for the logs. Appellant St. Paul Fire and Marine Insurance Company ("St. Paul") provided such bonds with Brazier as the principal and the USFS as the obligee.

On May 17, 1984, Fort Vancouver Plywood Company ("Fort Vancouver") entered into a log sales agreement with Brazier for a specified quantity of logs. Brazier harvested these logs from a particular USFS timber sale known as the "Dry Johnson" sale. The logs were delivered to Fort Vancouver in installments between May and August 1984.

In August 1984, Brazier filed petitions under Chapter 11 of the Bankruptcy Code. Fred B. Moe Logging Company ("Moe") and Cowlitz Loggers Association ("Cowlitz"), logging subcontractors hired by Brazier, then served notices on Fort Vancouver that they claimed liens against logs harvested by Brazier from the Dry Johnson sale. Because of these notices, Fort Vancouver stored all logs it received from the Dry Johnson sale after July 20, 1984, and withheld payment of the price for those logs.

On September 5, 1984, the USFS filed a lien against the logs removed from the Dry Johnson sale for $183,697.45. After Brazier defaulted in payments due to the USFS, St. Paul paid the USFS in full in satisfaction of the terms of its bonds. However, as St. Paul now concedes, it made no payments under or on account of the Dry Johnson sale. Thus, St. Paul is not subrogated to the USFS's rights in the Dry Johnson logs and claims no lien against the logs.

In September 1984, Brazier filed a complaint with the bankruptcy court to sell its log inventory free and clear of all liens. Brazier named as defendants all parties who had asserted claims to the logs, including Rainier, St. Paul, the USFS, Fort Vancouver, Moe, and Cowlitz. In March 1985, Brazier applied for an order establishing the priority of the loggers' lien claims, the USFS stumpage lien, and Rainier's security interest. The bankruptcy court certified this question to the Washington Supreme Court, which ruled that the loggers' liens were superior to the USFS stumpage liens, and that the stumpage liens were superior to Rainier's security interest. *See In re Brazier Forest Prod., Inc.*, 106 Wash.2d 588, 603–04, 724 P.2d 970, 979 (1986).

The logs were then sold and the proceeds placed in the blocked log account. The bankruptcy court ordered that any liens on the logs be attached to the proceeds of their sale. Accordingly, the bankruptcy court authorized the disbursements of proceeds in the blocked log account to Moe and Cowlitz to satisfy their loggers' liens.

In May 1987, St. Paul initiated an action in Washington state court, alleging that Fort Vancouver had eloigned logs held subject to the USFS's stumpage lien. Brazier removed the action to the bankruptcy court.

In February 1988, Fort Vancouver moved for summary judgment against St. Paul in both adversary proceedings on the ground that St. Paul had no valid lien claim against the logs delivered to Fort Vancouver. On March 10, 1988, the bankruptcy court granted Fort Vancouver's motions for summary judgment in these proceedings.

St. Paul then appealed the bankruptcy court order to the district court. The district court affirmed, finding that marshaling of assets was not applicable and, therefore, St. Paul had no claim to the logs held by Fort Vancouver. St. Paul appeals, claiming the district court erred in refusing to apply the doctrine of marshaling of assets. We affirm.

DISCUSSION

St. Paul argues that the bankruptcy court erred in refusing to apply the doctrine of marshaling of assets to this case. Where one creditor has an interest in two properties of a debtor and a second creditor has a junior interest in only one of these properties, a court may invoke the doctrine of marshaling of assets to require the senior creditor to proceed first against the fund on which she has an exclusive lien, leaving the junior creditor a potential fund to satisfy her claim. *See, e.g., Meyer v. United States*, 375 U.S. 233, 236–38, 84 S.Ct. 318, 320–22, 11 L.Ed.2d 293 (1963).

St. Paul presents two theories to support its argument. First, it claims it satisfies the common law requirements for marshaling. Second, St. Paul argues that the bankruptcy court's December 11, 1986 order gave it an absolute right to invoke marshaling. We reject both arguments.

I. *Common Law Marshaling of Assets*

■ Initially, St. Paul asserts that it bears no burden of proof on summary judgment because it is the nonmoving party. However, this argument ignores *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex*, the Supreme Court recognized that the moving party always bears the initial burden of establishing the absence of a genuine issue of material fact. *Id.* at 323, 106

S.Ct. at 2552. However, if the nonmoving party bears the burden of proof on an issue at trial, the moving party need not produce affirmative evidence of an absence of fact to satisfy its burden. *Id.* The moving party may simply point to the absence of evidence to support the nonmoving party's case. *Id.* The nonmoving party must then make a sufficient showing to establish the existence of all elements essential to their case on which they will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. at 2552–53. If the nonmoving party fails to make such a showing, summary judgment will be granted because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

■ At trial, St. Paul would bear the burden of proof on the issue of marshaling. *Edward L. Eyre & Co. v. Hirsch*, 36 Wash.2d 439, 218 P.2d 888, 898 (1950). Therefore, in order to defeat the motion for summary judgment, St. Paul must establish the existence of the elements of marshaling. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ Marshaling is an equitable remedy and the decision to grant or deny marshaling of assets rests within the discretion of the trial court. *Eyre*, 218 P.2d at 898. Generally, marshaling may be invoked only: (1) on behalf of junior secured or lien creditors; (2) where the debtor has two distinct funds; and 3) where its operation would work no inequity upon the debtor or certain third parties. *See* Note, *Marshaling Assets in Bankruptcy: Recent Innovations in the Doctrine*, 67 Cardozo L.Rev. 671 (1985). The specifics of the marshaling doctrine are governed by the law of Washington. *See Victor Gruen Associates, Inc. v. Glass*, 338 F.2d 826, 829 (9th Cir.1964).

■ Under Washington law, only secured or lien creditors can petition a court to marshal a debtor's assets. *See Wenatchee Production Credit Ass'n v. Pacific Fruit and Produce Co.*, 199 Wash. 651, 92 P.2d 883, 886–87 (1939). St. Paul claims it is a lien creditor in the blocked log account because it is subrogated to the rights of

the USFS.[1] However, a subrogee can only succeed to whatever rights the creditor had in the collateral. *Nat'l Bank of Washington v. Equity Investors*, 86 Wash.2d 545, 546 P.2d 440, 447–448 (1976). Therefore, St. Paul must show that the USFS had a valid lien in the blocked log account in order to establish that it is a lien creditor.

St. Paul admits it has failed to offer any evidence that the USFS had valid liens in the blocked log account. However, St. Paul contends that this issue is not properly before the court because it was not raised below. Appellees may assert any matter on the record to support the judgment. *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir.1984). Therefore, Fort Vancouver may support the judgment below by raising a lack of evidence in the record regarding an element of St. Paul's claim.[2]

■■■ St. Paul failed to introduce proof that the USFS had valid liens in the blocked log account. Therefore, St. Paul cannot establish its standing as a lien creditor to request marshaling. *See Wenatchee Production*, 199 Wash. 651, 92 P.2d at 886–87. Thus, the district court properly refused to allow St. Paul to invoke the marshaling doctrine to request equitable subordination to Moe and Cowlitz's lien.[3]

## II. *Bankruptcy Court's Order*

■■■ St. Paul also claims that the order of the bankruptcy court in December 1986, authorizing the disbursement of proceeds in the blocked log lien account to Moe and Cowlitz to satisfy their loggers' liens, entitled it to marshaling. The stipulated order, signed by counsel for Brazier, the logging companies, St. Paul, and Rainier, included the following language:

[t]hese payments shall be without prejudice to any party's right to later argue that these payments could or should have been made from sources, including logs or proceeds not included in this blocked account. To the extent such other sources exist to satisfy any lien claims, such payments shall be deemed to have come from such source. However, in no event shall any logger lien claimant be required to refund funds paid from this blocked account nor shall Brazier be responsible or liable for any allegedly improper allocation.

The quoted language preserves the rights of the parties to later argue that payment should have come from other sources. It does not order marshaling. The bankruptcy court itself determined that the order did not provide that St. Paul was subrogated to Moe and Cowlitz's claims, indicating the court had not ordered marshaling. Because St. Paul failed to establish a right to marshaling under either common law or the district court order, it cannot assert a right to equitable subordination to Moe and Cowlitz's claims to the Fort Vancouver timber.

## III. *Attorney's Fees and Costs*

Fort Vancouver has requested attorney's fees incurred on appeal pursuant to 28 U.S.C. § 1912 and Fed.R. of App.P. 38. This court has discretion to award damages, attorney's fees, and single or double costs as a sanction for bringing a frivolous appeal. 28 U.S.C. § 1912; Fed.R.App.P. 38; *Glanzman v. Uniroyal Inc.*, 892 F.2d 58, 61 (9th Cir.1989). " 'An appeal is considered frivolous in this circuit when the

1. In the district court, St. Paul claimed it was subrogated to the USFS lien in the Dry Johnson timber held by Fort Vancouver. The district court rejected this claim, and St. Paul now concedes it has no subrogation rights through the USFS to that timber.

2. The case cited by St. Paul, *Wymer v. Wymer*, 16 B.R. 497 (Bankr. 9th Cir.1980), is inapposite. In *Wymer*, the Bankruptcy Appellate Panel refused to reach a party's allegations of res judicata raised for the first time on appeal because the court would have to go outside the record to the previous case to decide the claim. In this case,

Fort Vancouver's argument relies on an absence of proof in the record and does not require resort to outside sources to resolve.

3. St. Paul requests that we take judicial notice of the USFS liens attached to their reply brief. However, St. Paul raised the issue of judicial notice for the first time in their reply brief. Generally, we will not "consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir.1986). Therefore, we decline to consider St. Paul's judicial notice argument.

result is obvious or the appellant's arguments are wholly without merit.'" *Id.,* (quoting *McConnell v. Critchlow,* 661 F.2d 116, 118 (9th Cir.1981)).

St. Paul's arguments are not so wholly without merit as to warrant sanctions in the form of attorney's fees. Attorney's fees for the appeal are denied.

Rainier requests costs for maintaining this appeal under Bankruptcy Rule 8014, which states that:

> Except as otherwise provided by law, agreed to by the parties, or ordered by the district court or the bankruptcy appellate panel, costs shall be taxed against the losing party.

Because the district court's order is affirmed, Rainier's costs are taxed against St. Paul as the losing party under this rule. *See In re Hawaii Dimensions, Inc.,* 47 B.R. 425 (D.C.Haw.1985); *Adler v. Bancplus Mortgage Corp.,* 108 B.R. 435 (D.C. N.Y.1989).

AFFIRMED.