[No. 25439. Department One. May 21, 1935.]

ROBERT HOLLINGSWORTH *et al., Respondents,* v. ROBE LUMBER COMPANY, *Appellant,* R. H. TEGTMEIER *et al., Defendants.*[1]

*S. H. Kelleran,* for appellant.
*Bascom & Bascom,* for respondents.

[1]Reported in 45 P. (2d) 614.

MAIN, J.—This action was brought to recover wages for labor performed in a logging operation and to foreclose liens for such labor. In the complaint, there is an attempt to separately state four causes of action. In the answer, after denials to the material allegations of the complaint, there is an affirmative defense of a written contract executed by the plaintiffs and the defendant Robe Lumber Company.

The trial was to the court without a jury, and no formal findings or conclusions of law were made. There was a decree against the Robe Lumber Company in the sum of $352.20, and the lien claimed was established and foreclosed. It was such a lien as is provided for in Rem. Rev. Stat., § 1149 [P. C. § 9737]. The decree also provided that the defendant Hingston Box Company should pay into the registry of the court the sum of $231, which was owing by that company to the Robe Lumber Company. As to all the other defendants, the action was dismissed. From the decree, the Robe Lumber Company appeals, and the only parties to the appeal are that company and the respondents Robert Hollingsworth, Elmer Revoyr, and Nedwin Redick.

The appellant was the owner of a small sawmill and some timber adjacent thereto, near the town of Robe, in Snohomish county. For sometime prior to November 11, 1933, the mill had not been operating, and logging operations had ceased. The manager of the appellant was A. B. Mesher. Prior to the date mentioned, Mesher was offered a contract by the Hingston Box Company for 200 M. feet of box lumber. He did not accept the offer until he could ascertain the cost of getting out the lumber. Through an employment agency, he was brought in contact with R. H. Tegtmeier. Neither had known the other prior to that time. Mesher explained to Tegtmeier that he would

not start operations unless there could be lined up a logging crew and a mill crew on a contract basis.

Sometime in the early part of November, 1933, a logging contract was entered into between the appellant and others who were to constitute, with Tegtmeier, the logging crew. Subsequent to this contract having been executed, Mesher accepted the Hingston Box Company's order for the box lumber. The contract with the men who were to operate the mill was not introduced in evidence and is not involved in this case. The logging contract is dated November 11, 1933, and fixes the price for the logging of fallen timber and the price for the standing timber. Subsequently, another contract was entered into, which recited that it superseded and took the place of the previous contract. The second contract was signed by Tegtmeier, the three respondents, and five others of the logging crew.

Logging operations were begun sometime before the middle of November, 1933. Tegtmeier employed the crew, and none of the respondents made any request for money until shortly before Christmas. On or about January 11, 1934, the respondents demanded of the appellant wages for the work that they had done in the sum of $3.50 per day, less $1.00 per day which was taken out for board. The money was refused, and thereafter the lien claims were filed and this action begun.

As stated in the respondents' brief, "the only question at issue in this case is as to the validity, force and effect of the pretended contract." The contract referred to in the question is the second contract. The respondents say that the relation between them and the appellant was that of employer and employee. The appellant says that the respondents and the others who signed the contract were independent contractors.

An independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the result of the work, and not as to the manner or means by which it is accomplished. *Cary v. Sparkman & McLean Co.,* 62 Wash. 363, 113 Pac. 1093; *Schade Brewing Co. v. Chicago, M. & P. S. R. Co.,* 79 Wash. 651, 140 Pac. 897; *Johnston v. Seattle Taxicab & Transfer Co.,* 85 Wash. 551, 148 Pac. 900.

The general test to be applied to determine the question of whether the relation of employer and employee exists is determined by whether the employer retained the right, or had the right under the contract, to control the mode or manner in which the work was to be done. *Glover v. Richardson & Elmer Co.,* 64 Wash. 403, 116 Pac. 861; *Dishman v. Whitney,* 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460.

In determining the question of the relation of the parties, attention must be given to the terms of the contract under which the operations were conducted. It recites that it is an agreement made between the Robe Lumber Company, the appellant, and "R. H. Tegtmeier & Company, a copartnership as logging contractors," and supersedes all agreements of prior date. It is provided in the contract that the contractors, meaning those associated with Tegtmeier, agree to furnish all the labor, one donkey engine, yarding and logging equipment, and the hand tools with which to cut, yard, load and deliver the logs to the Robe Lumber Company's water pond. The schedule of prices is fixed at $1.48 per thousand feet for fallen timber and $2.08 for standing timber; also "Fir peeler Blox as per specifications of the Robe Lumber Company $2.75 per M feet." The tally and scale were to be based upon invoices received from the box company on the 10th of each month. There were to be no extra charges

for building roads or extending railroad lines for logging operations. The Robe Lumber Company on its part agreed to furnish the

". . . contractors the existing rail line, one gas power driven locomotive (gas and oil to be furnished by contractors), one logging car, one donkey engine together with all the equipment for yarding and loading."

Tegtmeier & Company, in its operations, was required to comply with "all state laws, fire warden regulations, N. R. A. code and rulings of West Coast Lumbermen's Association code committee rulings." The lumber company was not to be held liable because of shutdowns "due to climatic conditions, unfavorable markets or other unavoidable factors." Following this came a provision that "all logging operations are subject to the approval of the Robe Lumber Company." In all dealings and representations between the Robe Lumber Company and the logging contractors, "R. H. Tegtmeier & Company shall be represented by R. H. Tegtmeier and any and all acts made by him shall be deemed binding on the copartnership." Payment was to be made by the Robe Lumber Company to the logging contractors on the 10th of each month for the lumber sold and delivered the previous month and as "per scale and tally received by the Robe Lumber Company from its buyers."

The contract concludes:

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

R. H. TEGTMEIER & Co.　　ROBE LUMBER COMPANY
R. H. Tegtmeier
R. Hollingsworth　M. J. Marsolais　By............................
Ed Jones　　　　Jerry Dow　　　　Manager
E. Revoyr　　　　Nedwin Redick
F. Farmer
Ted Hallworth"

It will be observed that all three of the respondents signed this contract.

In construing the contract, it is, of course, elementary that the intention of the parties thereto is to be gathered from the whole instrument, and each part, if possible, should be construed so that all the parts thereof may have some effect. All of the provisions of the contract, with the exception of that providing that all logging operations shall be subject to the approval of the lumber company, plainly indicate an intention of the parties signing the instrument that the relation was to be that of independent contractors. In other words, those signing with Tegtmeier were not employees of the lumber company but independent contractors.

The provision providing for all operations to be subject to the approval of the lumber company, when read in connection with all of the other provisions of the contract, does not establish the relation of employer and employee.

In 14 R. C. L. 68, it is said:

"Thus a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the employee as to the details or methods of doing the work, but is only that the employer may see that the contract is carried out according to the plans."

The rule of the text thus stated is supported by the cases of *Powell v. Virginia Construction Company*, 88 Tenn. 692, 13 S. W. 691, 17 Am. St. 925, and *Casement v. Brown*, 148 U. S. 615, 13 S. Ct. 672, and others that might be cited.

The respondents, however, say that, when they

signed the contract, they thought they were doing so as witnesses and not as parties. The evidence does not leave this question in doubt. The decided weight of the testimony, as well as all the surrounding facts and circumstances, indicate that the respondents did not sign as witnesses, but did sign as parties thereto. Prior to the signing of the contract, which took place at the bunkhouse, all the parties had visited the timber, which indicated that they were interested as parties rather than as employees. There are other circumstances of like import which need not be gone into here. Each of the respondents could read and write the English language and were, apparently, men of at least ordinary ability. There is no evidence from which it can reasonably be concluded that they were overreached in the signing of the contract.

█ It is pointed out that the purported signature of the Robe Lumber Company contains a blank space where it was intended that an officer of the company should sign. Even though not executed by the lumber company, it operated under it, and it would not be permitted now to repudiate it if it were seeking to do so.

Reliance to some extent appears to be placed upon the fact that the lumber company paid the industrial insurance premium, but the evidence makes the reason for this plain. Those associated with Tegtmeier as contractors under the contract at the time did not have the money to pay this premium, and it was advanced by the lumber company. The fact that it was so paid was a matter to be taken into consideration, but by no means controlling.

Since we are of the view that the agreement constituted those signing with Tegtmeier as independent contractors, the lien allowed in the decree must likewise fail, because that lien was allowed under a

provision of the statute which contemplates the relation of employer and employee.

The judgment will be reversed, and the cause remanded with direction to dismiss.

MILLARD, C. J., TOLMAN, BEALS, and GERAGHTY, JJ., concur.