[No. 34165.   Department Two.   November 21, 1957.]

R. M. FANCHER et al., Respondents, v. IVAN K. LANDRETH et al., Appellants.[1]

*Engst & Phelps,* for appellants.

*John Hancock,* for respondents.

SCHWELLENBACH, J.—This is an appeal from a judgment in favor of plaintiffs, in consolidated actions to foreclose timber liens, tried to the court.

October 1, 1953, plaintiffs contracted to sell to Tonasket Lumber Company certain timber which was located on plaintiffs' lands.

The contract provided:

"Said Sellers agree to sell and the said Purchaser agrees to buy all merchantable timber now growing upon the herein described real property for which said Purchaser agrees to pay the following prices:

| | |
|---|---|
| Pine | $20.00 |
| Fir & Larch | 8.00 |

[1] Reported in 317 P. (2d) 1066.

" . . .

"It is agreed that the price payable by the Purchaser shall be computed upon the scale at the mill where said logs are delivered. The Purchaser agrees to furnish to the Sellers duplicate scale slips on all logs taken from the above described premises at the time payment is made by the Purchaser to the Sellers for the logs delivered, which payment shall be made on Monday following week of delivery. Upon execution of this contract, Purchaser agrees to pay to the Sellers, the sum of $5,000.00, receipt of which is hereby acknowledged, which amount shall be credited on the last logs removed under the terms hereof. . . ."

Tonasket Lumber Company partially performed the contract, and then went into receivership. August 16, 1954, the receiver, with court approval, assigned the contract to T. L. Landreth and Ivan Landreth, copartners doing business as Landreth Timber Company.

The Landreths immediately began to remove timber. Each week they submitted scale slips to plaintiffs and on the following Monday sent checks in payment for the timber removed. The scale was computed by use of the Scribner Decimal C Log Rule, by finding the length of the log, then applying the rule to an average of the diameter of the small end, including the bark on one side. (The same method of scaling was done by the Tonasket Lumber Company.) If the taper was extreme, the scaler would approximate the diameter of the unseen end, including the bark on one side, and make such allowance above two inches as he deemed justified. All scales were made at the defendants' mill in Tonasket, as provided by the contract.

This procedure was followed until January 15, 1956, after which the purchasers continued sending weekly scale slips, but made no further payments. This was because they believed, on the basis of a spot cruise, that the remaining merchantable timber was approximately equal to the credit due them under the contract. They contended that the "one bark" method of scaling was wrong, and that the proper and accepted method was to measure the wood only; that their sole reason for using the "one bark" method was

for the benefit of the "gyppo" truckers, to compensate them for extra weight carried.

Commencing January 25, 1956, plaintiffs filed timber lien notices and later brought two actions to foreclose them, which actions were consolidated for trial. In their answers, defendants alleged that they had overpaid eleven per cent on the contract, due to the inclusion of one bark in the scale measurements. They alleged that on August 16, 1954, the day the contract was assigned to them, they mailed the following letter to Mr. Fancher (Fancher denied having received it):

"LANDRETH TIMBER CO.
TONASKET, WASH.
AUGUST 16, 1954

"Mr. R. M. Fancher
Tonasket, Washington
Dear Sir:

"We have purchased the timber contract with you that was owned by the Tonasket Lumber Co.

"The assignment of this contract has been approved by the Superior Court of Okanogan County and the Receiver for the Tonasket Lumber Co. According to the records of the Receiver, we have a prepaid credit of $5,091.39 on this contract that we will apply on the last part of the logs removed.

"We will mail your payment for the logs by the close of the day on Monday for logs received at the mill the previous week, and will enclose the original copy of the loggers scale slips. The payment to you on the basis of the loggers scale slips will constitute an accumulative overpayment to you of a little more than 11% above the price and terms of the timber contract inasmuch as we will be giving the loggers an additional 1″ of scale on the Scribner Decimal C Rule for hauling the bark of the logs. The standard mill log scale in this area is based on the Scribner Decimal C Rule which is computed from measuring the wood only.

"We hope this will meet with your approval.

"Yours very truly,
LANDRETH TIMBER COMPANY
[Exhibit is carbon copy
By    bearing no signature]"

·After trial, the court entered findings, conclusions, and judgment in favor of plaintiffs. This appeal follows.

Although appellants make twenty-seven assignments of error, there is only one issue in this appeal, the inclusion of one bark in scaling. Appellants contend that the standard scale in effect in Okanogan county for determining merchantable footage in logs and the scale in effect under the contract is by Scribner Decimal C Log Rule, with all diameters to be measured inside the bark at the small end of the log. They introduced substantial, relevant evidence to that effect.

Respondents, on the other hand, contend that the proper scale is to include one bark in measuring merchantable timber, and that that is the custom used in smaller mills in that area. They produced substantial, relevant evidence to that effect.

■ The trial court found for the respondents on that issue. Since the court's findings are supported by the record, we will not overturn them. *Croton Chemical Corp. v. Birkenwald, Inc.* (1957), 50 Wn. (2d) 684, 314 P. (2d) 622.

The "one bark" method of scaling was followed by the Tonasket Lumber Company, the original purchaser. The same method was followed by the appellants. They contend that this was done merely to compensate the "gyppo" loggers who hauled to the mill, and that they notified respondents of their position in their letter of August 16, 1954, the day of the assignment of the contract to them. Ivan K. Landreth testified that he wrote and mailed the letter on August 16, 1954. Mr. Fancher denied ever having received it. Appellants never, in their bookkeeping set-up, carried any item to show that they were making an eleven per cent overpayment to the respondents.

■ A supplemental agreement was entered into between appellants and respondents on September 30, 1955, extending the time for performance. No mention was made therein of any overpayment, or of any question as to the method of scaling. The trial court made finding No. 18, that

the appellants had failed to prove that respondents ever had notice that the weekly payments included an overpayment of eleven per cent. This finding is not assigned as error, and therefore becomes an established fact in the case. Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953.

The appellants approached the matter obliquely by assigning error to the trial court's failure to give their proposed finding No. 18. The fact that the proposed finding was inconsistent with finding No. 18, as made, is not a sufficient assignment of error to finding No. 18 within the purview of Rule on Appeal 43, *supra*. We are, however, satisfied that regardless of the propriety of the method of attack, there was sufficient evidence to sustain finding No. 18 as made.

The contract provided for the sale of merchantable timber, the price payable to be computed upon the scale at the mill where the logs were to be delivered. No specific method of scaling (whether by measuring one bark, or by measuring inside the bark) was provided in the contract; however, the appellants at all times measured one bark, and that procedure was acquiesced in and approved by the respondents. The interpretation which the parties to a contract have placed on it, by their performance of it, is entitled to great, if not controlling, weight. *Thayer v. Brady* (1947), 28 Wn. (2d) 767, 184 P. (2d) 50.

We find no errors occurring at the trial. The judgment is affirmed.

HILL, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ.—The foregoing opinion had been prepared by Judge E. W. Schwellenbach before his death. The four surviving members of Department Two have adopted it as their opinion, and, for the reasons therein assigned, affirm the judgment of the trial court.