[No. 35004.    *En Banc.*    October 15, 1959.]

PAUL V. KENNEDY *et al., Respondents,* v. WEYERHAEUSER TIMBER COMPANY, *Appellant.*[1]

*Oliver Malm* and *Roger C. Henselman,* for appellant.

*Houghton, Cluck, Coughlin & Henry,* for respondents.

MALLERY, J.—This is an action to recover an additional day's pay under the terms of a collective bargaining agreement. The plaintiffs are the assignees of defendant's employees.

Believing the instant case to be controlled by *Local Union 9-2521, IWA-CIO, Plywood & Veneer Workers v. Aberdeen Plywood Corp.,* 47 Wn. (2d) 636, 289 P. (2d) 206, the trial court entered judgment for the plaintiffs, from which the defendant appeals.

Respondents contend the trial court was correct in so doing. The appellant contends to the contrary, and we agree.

In both cases, the claim for an extra day's pay arose out of the fact that in 1954 the Fourth of July fell in the middle

[1]Reported in 344 P. (2d) 1025.

of the vacation period designated by the employers. Since the employees were on strike, none of them returned to work at the end of the vacation period. They were paid for the regular vacation, but not for an extra day on account of the holiday falling within the vacation.

The claim herein is dependent on the proper interpretation to be given to Articles VII and XV (g) of the agreement. They provide:

"Article VII—Holidays

"The following holidays shall be observed: Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, New Year's Day, . . . and Christmas Day . . . shall be recognized as paid holidays for qualified employees. . . . If a holiday falls on Sunday, the following Monday shall be recognized as the holiday. Holiday pay shall be eight (8) hours' pay per holiday computed at the qualified employee's regular job rate of pay for his regular work schedule. . . .

"An employee *is qualified for holiday pay if he* has at least thirty-one (31) days' seniority prior to the holiday and *works the last regularly scheduled work day before and the first regularly scheduled work day after the 'paid' holiday.* . . .

"Article XV—Vacations . . .

"g. *If a holiday occurs during the calendar week in which the vacations are taken by any of the employees, one additional day's vacation shall be taken* because of such holiday by all individuals who are entitled to a complete vacation based on 1400 hours worked, but no additional day of vacation shall be granted to those who are taking vacations based on less than 1400 hours worked." (Italics ours.)

Appellant contends that Article XV (g) does no more than extend a vacation by one day if a holiday happens to fall within it, and pay for that extra day is solely dependent on whether the individual employee qualifies for a paid holiday under Article VII. This is for the reason that the agreement elsewhere provides for precise pay schedules for vacations based on the number of hours worked by an individual employee during the preceding year.

Respondents contend that the employees qualify for an extra day's pay for the Fourth of July under Article XV (g) because it extended the vacation period as such by one

extra day, and, hence, they should be paid for it. This conclusion is predicated upon the theory that it must be inferred that the extra day of vacation automatically enlarges the precise provision for paid vacations by one day. This inference was allowed in the *Local Union 9-2521* case, *supra*.

There is a substantial difference between the instant case and the *Local Union 9-2521* case, *supra*. The latter case was an appeal from a summary judgment, and the record contained no evidence of the facts prevailing when the agreement was made or the interpretation given it by the parties. The record in the instant case has a complete history of the agreement and the construction given to it by the parties.

In construing a contract, the intention of the parties must control (*Crofton v. Bargreen,* 53 Wn. (2d) 243, 332 P. (2d) 1081), and the interpretation which the parties to a contract have placed on it will be given great, if not controlling weight. *Fancher v. Landreth,* 51 Wn. (2d) 297, 317 P. (2d) 1066; 12 Am. Jur., Contracts, 787, § 249.

Since 1946 the language of Article XV (g) has remained unchanged. Prior to 1950, holidays were not paid for. From 1946 to 1950 employees were granted an extra day of vacation if a holiday fell within their vacation period, but in no instance were they paid for an extra day of vacation. In 1950, Article VII was modified to provide for paid holidays.

After 1950, employees were still granted an extra day of vacation if the holiday fell within their vacation period, but only those employees who qualified under Article VII were paid for the extra day. The appellant's bookkeeping and payroll practices accurately reflected that practice. From 1946 through 1954 no objection to that practice was ever made. The first objection was made on December 29, 1955, following the publication of the *Local Union 9-2521* case, *supra*. The undisputed record supports appellant's contention that prior to 1955 the parties had uniformly followed its interpretation of the agreement that pay for holidays is governed solely by Article VII.

It is obvious that under Article VII none of the employees qualified for a paid holiday because of the Fourth

of July falling in the period of his vacation for the reason that none of them returned to work on the first regularly scheduled work day thereafter.

The trial court erred in not applying the interpretation of the collective bargaining agreement given it by the parties.

The judgment is reversed.

WEAVER, C. J., HILL, DONWORTH, FINLEY, OTT, and FOSTER, JJ., concur.

HUNTER, J. (dissenting)—The reasoning in the case of *Local Union 9-2521, IWA-CIO, Plywood & Veneer Workers v. Aberdeen Plywood Corp.*, 47 Wn. (2d) 636, 289 P. (2d) 206, is sound and is controlling in the instant case.

The majority opinion states that in order for the employee to be entitled to an additional day of paid vacation under Article XV (g), where a holiday falls within a vacation period, the employee must qualify for a paid-up holiday under Article VII. I disagree. The majority fail to recognize the distinction that the holiday referred to in Article VII is a holiday that falls within a regularly scheduled work week, whereas holidays falling within a vacation period are treated separately in Article XV. We recognized this distinction in the *Local Union 9-2521* case, *supra*, in construing an agreement similar to that of the instant case. There we said:

"Appellant's contention is correct as to all paid holidays occurring within a regularly scheduled *work* week. However, by agreement of the parties, the holiday lost its identity as such when it came within a *vacation* week. When the employer elects to choose a vacation week which 'contains a holiday as defined in Article VII, the *vacation week* shall be extended one additional day.' (Italics ours.) In such a case, the day is not recognized as a holiday, but as an additional vacation day. Having been designated as an additional vacation day, it becomes subject to the conditions of the contract governing vacations. Since all eligible employees concerned in this action were entitled to at least one week's vacation, and since the first week of the scheduled vacation contained the additional day, all employees would be entitled to an extra vacation day.

"Paragraph 5 of Article VII-A specifies that for a seven-day vacation week, the employee is entitled to forty hours of pay time, and also fixes the rate of vacation pay. The contract (Article VI) contemplates a regular work schedule of 'five eigth-hour days commencing on Monday and ending on Friday.' Hence, it follows that it was within the contemplation of the parties that, when the vacation week was extended one day, it then included an additional eight-hour day at the hourly rate of pay applicable to the eligible employee."

The majority opinion, however, states that the *Local Union 9-2521* case, *supra,* was an appeal from a summary judgment, and the record contained no evidence of the facts prevailing when the agreement was made or the interpretation given it by the parties; whereas, in the instant case, there is a history of the agreement and the construction given it by the parties. The majority opinion then proceeds to give the agreement a practical construction. This is not a case for the application of the doctrine of practical construction. In *Bellingham Securities Syndicate v. Bellingham Coal Mines,* 13 Wn. (2d) 370, 125 P. (2d) 668 (1942), we stated:

"It is only in those cases where the writing fails to provide the answer to a question of meaning that the courts may look elsewhere for aid in construction. Where the terms are plain and unambiguous, the meaning of the contract is to be deduced from its language. 17 C.J.S. 695. *That the position of appellant is correct and it is unnecessary to resort to aids to construction, is clear from an examination of the whole contract, which must be construed as a whole, and the intention of the parties gathered from the entire instrument. There is no room for the application of the rule of practical construction. The agreement is not ambiguous. . . .* " (Italics mine.)

By reading Article XV in its entirety, it appears clear that holidays occurring in a vacation period are in a different category from those occurring in other periods. Article XV expressly contemplates paid vacations, in the first paragraph, as follows:

"Each employee shall receive a *vacation with pay* subject to the following conditions: . . . " (Italics mine.)

The following subsections (g), (h), and (j) provide:

"(g)  If a holiday occurs during the calendar week in which the vacations are taken by any of the employees, one additional day's vacation shall be taken because of such holiday by all individuals who are entitled to a complete vacation based on 1400 hours worked, but no additional day of vacation shall be granted to those who are taking vacations based on less than 1400 hours worked.

"(h)  The rate of vacation pay shall be the employee's straight time hourly rate in effect on the payday immediately preceding his vacation. For piece workers, the vacation pay shall be arrived at by averaging the weekly earnings of the individual for each forty-hour week worked during the ninety-day period next preceding the date when vacations are announced.  . . .

"(j)  Vacation payment shall be made prior to the beginning of the vacation period in each case."

There is no room for question as to whether the additional day of vacation referred to in subsection (g) is paid vacation when read with the controlling first paragraph of Article XV, *supra*.

To give a construction to the collective bargaining agreement, as given by the majority, would make subsection (j) of Article XV meaningless and unworkable—"Vacation payment shall be made prior to the beginning of the vacation period in each case." How can the employer make payment in advance if it is subject to the contingency of the employee working on the first scheduled workday following the vacation?

The trial court was correct in entering judgment allowing the employees in question a paid vacation day for the holiday occurring within the vacation period. The judgment should be affirmed.

ROSELLINI, J., concurs with HUNTER, J.