[No. 38964. Department One. October 13, 1967.]

SAFECO INSURANCE COMPANY OF AMERICA, *Respondent*, v.
ROBERT L. MCMANEMY, SR., *et al.*, *Appellants*.*

*Lawrence M. Ross* (of *Ross & Schweinler*), for appellants.

*Gordon, Sager, Honeywell, Malanca & Peterson, Richard J. Jensen,* and *Warren R. Peterson,* for respondent.

JAMES, J.†—Respondent brought this action pursuant to the Uniform Declaratory Judgments Act, RCW 7.24, seeking judicial construction of an insurance contract. The contract, an automobile policy, written by respondent, was purchased by appellants. The single question concerns the limit or limits of coverage provided by the policy to compensate the insured for bodily injuries sustained as a result of an accident involving "Uninsured Motorists."

Respondent asserts that the contract provides limits of $10,000 for each person with a total of $20,000 for each accident covered. Appellant asserts that the single limit is $25,000 for each person with a total limit of $25,000 for each accident.

Each party argues that properly construed the contract

*Reported in 432 P.2d 537.

†Judge James is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

must be read to support his contention. Appellant further argues that if there is doubt as to the precise meaning of the contract any ambiguity must be construed in his favor.

The trial court found no ambiguity and concluded that, when read in its entirety, the contract limited the obligation of respondent to $10,000 for any one person and $20,000 for any one accident.

We do not agree. Our reasons for disagreement will be better understood by a reference to the portion of the policy delineated "Declarations" and reproduced as a part of this opinion.

Our reasons can best be illuminated by reference to and comment upon respondent's argument in support of the trial court's judgment. Preliminarily to this approach, however, we will state the general principles to be followed in construing insurance contracts. (1) The terms of the insurance policy must be given their usual, popular and ordinary meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Town of Tieton v. General Ins. Co. of America*, 61 Wn.2d 716, 380 P.2d 127 (1963); *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107

P.2d 921 (1940). (2) A contractual term, reasonably susceptible of two different constructions, must be construed against the party who drafted the same. *Wise v. Farden,* 53 Wn.2d 162, 332 P.2d 454 (1958). (3) The meaning and construction most favorable to the insured must be applied even though the insurer may have intended another meaning. *Selective Logging Co. v. General Cas. Co. of America,* 49 Wn.2d 347, 301 P.2d 535 (1956); *Zinn v. Equitable Life Ins. Co. of Iowa, supra.* (4) In construing a contract, each part, if possible, should be so construed that all parts thereof shall have some effect. *Hollingsworth v. Robe Lumber Co.,* 182 Wash. 74, 45 P.2d 614 (1935); *Fardig v. Reynolds,* 55 Wn.2d 540, 348 P.2d 661 (1960).

Respondent first makes the point that to properly interpret the policy one must start with the declarations. We agree. Item No. 7, under which are specified the various types of automobile "Coverages," begins with the statement: "Coverages: Insurance is afforded only for such coverages as are indicated by specific premium charges."

Respondent then notes that the space in the column headed "Premium" is left blank in line "G, Uninsured Motorists" and draws the following conclusion:

> Thus in examining the Declarations page in its entirety, since there is no premium charge under Coverage G, Uninsured Motorist, and since Section 7 of the declarations provides specifically that there will be no coverage unless indicated by a specific premium charge, there is no Uninsured Motorist coverage under the terms of the Declaration page. Thus if we are to find any coverage for Uninsured Motorist we must examine the policy further.

The necessary further examination will, respondent points out, bring us to a consideration of an endorsement entitled "Single Limit Package." In particulars pertinent to our inquiry this endorsement reads as follows:

SINGLE LIMIT PACKAGE
(Coverages A, B, C and G)

In consideration of payment of the premium, it is agreed that the phrase "Single Limit Package" used in the declarations shall include:

Coverage A—Bodily Injury Liability
Coverage B—Property Damage Liability
Coverage C—Medical Payments
Coverage G—Uninsured Motorists

The paragraph entitled "Limits of Liability" in the Liability Section of the policy is deleted in its entirety and the following substituted therefor:

. . . .

| Coverages A and B | Coverage C |
|---|---|
| $25,000 | $1,000 |

. . . .

The limit of liability for Coverage G, Uninsured Motorists, is that shown in the declarations or on endorsement attached hereto.

Commenting upon the significance of the endorsement, respondent observes that we have now learned what the limits are with reference to coverages A, B and C, but that we will have to look further to ascertain the limit of coverage G.

The last sentence of the endorsement suggests two sources of information. A further examination of the policy discloses that there is no endorsement attached to the Single Limit Package endorsement, and so, as respondent states in its brief:

Having determined from the single limit package endorsement that there now is Coverage G, Uninsured Motorists, we refer back to the declaration page to determine the limits of this coverage and the declaration page, opposite G, Uninsured Motorists, and under the column marked "Limit", specifically states: "(Financial Responsibility Limit)".

Respondent then argues that the rest is easy. First, we turn to page 5 where we will find at the top of the page a caption reading "Damages for Bodily Injury Caused by Uninsured Automobiles Section (continued)" under which we will find "Limits of Liability" subsection (a):

The limit of Safeco's liability under this section shall be the limit of bodily injury liability required by the motor vehicle financial responsibility law of the state of residence, as shown on the declarations; . . . .

Respondent then points out that the state of residence shown in the declarations is Tacoma, Washington, and that all the insured need now do to ascertain how much coverage he has purchased for his protection from injury by an uninsured motorist is to turn to the Revised Code of Washington where he will learn that RCW 46.24.040 states:

> The operator's license shall remain suspended . . . until he gives proof of his ability to respond in damages for any liability thereafter incurred, . . . for personal injury to or death of any one person in the amount of at least ten thousand dollars, and, subject to the aforesaid limit for any one person injured or killed, of at least twenty thousand dollars for personal injury to or death of two or more persons in any one accident, . . . .[1]

Respondent's analysis of the contract is unacceptable for a number of reasons. We find no need to return to the "Declarations" for a second reading. There is no dispute, of course, as to the fact that appellant intended to purchase and that respondent intended to provide coverage for "Uninsured Motorists" liability. A first reading of the declarations informs appellant that his coverages are those for which he is charged a premium. It further informs him that the major portion of the total premium charge is for a coverage denominated "$25,000 Single Limit Liability." Given their ordinary meaning these words inform appellant that in consideration of the $45 premium respondent agrees to pay a maximum of $25,000 for each separate contingent liability (except C) included in that coverage. A reference to the next page of the policy (the Single Limit Package endorsement) informs him that included in the "package" for which the premium charge was $45 are four coverages, among which is coverage for his damages caused by uninsured motorists.

Any doubt that only one "limit" was intended for all coverages is dispelled by the repeated use of the singular. Appellant purchased a *Single Limit* package. He is informed that the "limit" of liability for uninsured motorists

---

[1]Repealed in Laws of 1963, ch. 169, § 69. The same monetary limits are now contained in RCW 46.29.090.

is "that shown in the Declarations." In handwriting on the declaration page he is informed that the *Single Limit* of the coverages purchased in the $45 package is $25,000.

Only when the circumlocutory argument of respondent is employed does the contract appear to be ambiguous. The caveat that "insurance is afforded only for such coverages as are indicated by a specific premium charge" cannot be made to disappear by reading the declaration page a second time.

Applying the rules of construction with which we began this analysis we find that the contract, read in its entirety, affords appellant a single coverage of $25,000 for the risk of injury by uninsured motorists.

The judgment is reversed.

FINLEY, C. J., WEAVER, ROSELLINI, and HALE, JJ., concur.