[No. 1648–3.   Division Three.   May 2, 1977.]

LEON NEIFFER, *Appellant,* v. JIM FLAMING, ET AL, *Respondents.*

*Kenneth C. Hawkins,* for appellant.

*Caw & Caw, Blythe B. Caw, Greg A. Rubstello,* and *Ken Earl,* for respondents.

Munson, C.J.—This case involves the same parties, property and lease as *Neiffer v. Flaming,* 17 Wn. App. 440, 563 P.2d 1298 (1977).

Plaintiff, Leon Neiffer, appeals the trial court's decree of specific performance dismissing Neiffer's complaint and ordering that the option to purchase, contained in the lease, be specifically enforced as a cash sale.

During the late summer and early fall of 1974, Flaming attempted to notify Neiffer that he intended to exercise the option to purchase the leased property. On August 14, 1974, Flaming's attorney sent a certified letter to Neiffer stating that Flaming intended to exercise the option; such letter was returned unclaimed. Flaming's attorney also sent a similar letter by registered mail to Neiffer; this letter was not returned. On September 12, 1974, Flaming deposited $16,000, the down payment specified by the option provision, with his attorney, who then sent a letter to Neiffer's attorney stating that Flaming had deposited the $16,000 and was ready to proceed with the purchase. Neither Flaming nor his attorney received any response to those letters until Neiffer commenced this action for a declaratory judgment seeking a determination of the parties' rights and duties under the option. Neiffer particularly sought a judgment in his favor with a declaration that Flaming had no right to exercise the option to purchase.

This case is complicated by the fact that on February 9, 1973, Melbert Belcoe had purchased the property at a sheriff's sale. (Flaming had paid the 1973 rent payments to Belcoe.) Neiffer's statutory right of redemption expired 1 year after the date of that sale. RCW 6.24.140. On February 7, 1974, Neiffer executed a warranty deed for this property to Mr. and Mrs. Morley Kerr. The purchase price between Neiffer and the Kerrs was $80,000, and a down payment of slightly over $42,000 was loaned to the Kerrs by respondent Interstate Production Credit Association. This loan was secured by a mortgage on the property; the remainder of the purchase price was secured by a second mortgage from the Kerrs to Neiffer. On February 8, 1974, Neiffer then

used this down payment to redeem the property from Belcoe.

In response to Neiffer's action from declaratory judgment, Flaming sought to have his exercise of the option declared valid. The court specifically found and ordered that Flaming was entitled to specific performance of the option by means of a cash sale; that the warranty deed from Neiffer to the Kerrs be set aside; that the mortgages from the Kerrs to Interstate PCA and to Neiffer be set aside; that Neiffer and the Kerrs prepare the necessary warranty deeds to clear title and to transfer the land to Flaming; and that Interstate PCA be given judgment against Neiffer and the Kerrs for the $42,000 loan to the Kerrs to be paid from the funds deposited by Flaming in the purchase of the property. Only Neiffer appeals. We affirm.

Neiffer first contends that the option provision in the lease is ambiguous and does not contain sufficient terms and conditions necessary for the sale of the property; therefore, the option cannot be enforced. This issue is raised for the first time on appeal. Therefore, this court will not consider such contention. *Talps v. Arreola,* 83 Wn.2d 655, 521 P.2d 206 (1974).

Furthermore, the option provision is not so ambiguous as to prevent a cash sale of the property. The option provision provided terms sufficient for a cash sale, *i.e.,* the necessary parties, the property subject to the sale, and the price of the property, $80,000. In *Valley Garage, Inc. v. Nyseth,* 4 Wn. App. 316, 481 P.2d 17 (1971), the court held that an option contract contained the essentials for the specific performance of a cash sale if the contract described the property and the means for determining the price. This lease and option provision meets those criteria. Any other terms which may be indefinite in the contract can be made definite by reference to legal presumptions and customs. *Valley Garage, Inc. v. Nyseth, supra.*

Neiffer next contends that the effect of the cash sale is a prepayment of the purchase price and is in contradiction to

the expressed language of the option provision. The option provision specifically provides:

"OPTION PROVISIONS:

1. OPTIONEE'S RIGHT OF OPTION: Optionor does hereby give and grant unto optionee the full right and option to purchase said real property at any time optionee elects to do so during the term of this lease for the sum of Eighty Thousand Dollars ($80,000.00).

TERMS:

Optionee shall pay the sum of Sixteen Thousand Dollars ($16,000.00) as a down payment within 30 days after optionee elects to exercise his option, and the balance in the sum of Sixty–four Thousand Dollars ($64,000.00) shall be paid in fifteen equal payments each calendar year thereafter plus interest at the rate of 7% per annum payable at the time of payment of each installment until the full sum of principal and interest has been paid.

The following rules are applicable and should be considered in construing the contract provisions.

1. The ordinary meaning of the words in the contract are to be used unless a different meaning is clearly intended. *Wasser & Winters Co. v. Jefferson County*, 84 Wn.2d 597, 528 P.2d 471 (1974);

2. The intention of the parties is to be gathered from the entire instrument and, if possible, by allowing each part of the contract to have some effect. *Safeco Ins. Co. v. McManemy*, 72 Wn.2d 211, 432 P.2d 537 (1967); *Hollingsworth v. Robe Lumber Co.*, 182 Wash. 74, 45 P.2d 614 (1935);

3. The contract language is to be interpreted most strongly against the party who drafted the contract or whose attorney prepared it. *Guy Stickney, Inc. v. Underwood*, 67 Wn.2d 824, 410 P.2d 7 (1966).

Flaming testified that an attorney named Miller drew the lease but that he did not know the attorney's first name nor did he pay the attorney, implying that Miller was Neiffer's attorney. Therefore, in interpreting the contract, it should be most strongly interpreted against Neiffer.

██ ██ In order to give effect to the option provision and to give the words their ordinary meaning, the contract must be interpreted as providing alternative methods by which Flaming could pay the purchase price if he elected to exercise his option and purchase the property subject to the lease agreement. If Flaming elected to exercise his option, the first paragraph allowed him "at any time" during the lease period to pay the $80,000 purchase price in a lump sum; whereas the second paragraph provided Flaming with an alternative method of paying the purchase price, *i.e.*, a down payment of $16,000 and the balance in 15 equal payments at seven percent interest. Since the contract itself provided that the sale of the property could be either a lump–sum payment of $80,000 or by installments, the court has the power to order a cash sale. *Haire v. Patterson,* 63 Wn.2d 282, 386 P.2d 953 (1963); *Hubbell v. Ward* 40 Wn.2d 779, 246 P.2d 468 (1952).[1] The trial court's findings of fact and conclusions of law that Flaming was entitled to a cash sale of the property were supported by substantial evidence and in accordance with the law. We find no error. *Gleason v. Metropolitan Mortgage Co.,* 15 Wn. App. 481, 551 P.2d 147 (1976).

Neiffer also contends that Flaming could not have exercised the option because the lease was not in full force and effect when Flaming attempted to exercise the option, *i.e.,* Flaming's failure to pay the February 1974 rent, and that Flaming failed to properly exercise the option because he did not strictly comply with the terms.

The contention that the lease was not in full force and effect is precluded by our decision in the companion appeal, *Neiffer v. Flaming, supra.*

Strict compliance with the option terms was rendered impossible by the combination of Neiffer's intentional unavailability preventing his receipt of Flaming's notice of intention to exercise the option and the lack of cooperation

---

[1]Although both the *Haire* and *Hubbell* cases used the disjunctive, we do not feel that the disjunctive. is necessary to allow for alternative means of payment.

by Neiffer's attorney in giving Neiffer notice of Flaming's intent. We find the court's findings and conclusions to be supported by substantial evidence and reasonable under the circumstances.

We affirm.

GREEN and McINTURFF, JJ., concur.