[No. 16318–3–I.  Division One.  March 16, 1987.]

PAINTERS TRUST, ET AL, *Appellants,* v. DANIEL E. WIXSON, ET AL, *Respondents.*

*John Ranquet,* for appellants.

*Theodore M. Rosenblume* and *Charles B. Allen,* for respondents.

STEWART, J.*—Painters Trust, Western Washington Painters Pension Trust, and Western Washington Apprenticeship and Training Trust (hereinafter Union or Trusts), as third party beneficiaries of a collective bargaining agreement, sought to recover contributions allegedly due under the agreement from Wixson Drywall. Wixson contends the agreement was terminated under article 24 of the collective bargaining agreement which provides:

> Section 1. This Agreement shall remain in full force and effective from August 1, 1980 until April 30, 1983, and shall automatically renew itself from year to year thereafter unless the Employers or the Union given [*sic*] written notice of intention to modify the terms of this Agreement or to terminate this Agreement at least sixty (60) days prior to April 30, 1983, or as the case may be, of a subsequent anniversary date. Either the Union or the Employers, if such party has given notice of intent to modify this Agreement, may terminate this Agreement by written notice any time after April 30, 1983.

On February 1, 1983, the Union gave notice to Wixson of its intent to modify the agreement. That letter stated: "we wish to re-open the contract for the purpose of negotiating changes . . ." The letter also stated the Union would be negotiating with a contractors association if the contractor had assigned its right and, if not, negotiations would be

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and an attorney at law sitting as Court of Appeals Judges Pro Tempore in Division One.

directly with the contractor.

On March 4, 1983, 57 days before the April 30 contract termination date, Wixson, by letter, advised the Union that he would negotiate directly. On July 6, 1983, Wixson also advised the Union that he

> hereby exercise[d] his right pursuant to Section 1 of Article XXIV of the Western Washington Area Agreement for the Drywall Industry, dated August 1, 1980 to terminate the agreement between himself and the Painters' District Council No. 5 and its member union locals. Wixson Drywall's election to terminate shall be effective on your receipt of this letter or Friday, July 8, 1983 whichever occurs first.

Under the terms of the contract, contributions are made to various employee benefit trusts by the employers. Monthly reports are required. Wixson continued to make monthly reports after April 1983 until his report of August 1, 1983, in which he stated: "No employees through July 6, 1983. Contract between us has been terminated as of date above."

The interpretation of collective bargaining agreements is controlled by federal law. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962); *Irwin v. Carpenters Health & Welfare Trust Fund,* 745 F.2d 553 (9th Cir. 1984). Federal law gives the parties broad discretion to devise procedures suitable to their own situation for negotiation or for proposed termination of collective bargaining agreements, Dovey, *Collective Bargaining Procedures* 272 (1952), and requires strict construction of such provisions. *Irwin v. Carpenters Health & Welfare Trust Fund, supra.* In *Irwin,* at 557, the court stated:

> The reason federal policy necessitates the strict construction of clear labor agreement terms is evident. The "basic theme" of federal policy governing labor contracts is "that through collective bargaining the passions, arguments, and struggles of prior years would be channeled into constructive, open discussions leading, it was hoped, to mutual agreement."

(Citations omitted.)

Wixson contends that the agreement terminated either on April 30, 1983 (the date specified in article 24 of the agreement), or on July 6, 1983 (the date Wixson gave notice of termination). In arguing that the agreement terminated April 30, 1983, Wixson apparently relies on the word "unless" in the first sentence of article 24 and contends the contract automatically terminates if written notice of an intent to modify is given by either of the parties. Actually, the provision states the contract renews unless either party gives notice of its intent to modify or terminate. The Trusts contend that the interpretation suggested by Wixson would render the second sentence of the termination provision[1] meaningless. We agree, because if the agreement were terminated as Wixson contends there would no longer be an agreement to be terminated by the notice provided for in the second sentence.

Wixson cites as authority for his position, the case of *Kaufman & Broad Home Sys., Inc. v. International Bhd. of Firemen,* 607 F.2d 1104 (5th Cir. 1979). The termination clause which was the subject in *Kaufman* provided:

> Section 1. This Agreement shall become effective as of November 13, 1967, and shall remain in effect until November 12, 1970, and from year to year thereafter with the provision that should either party desire to terminate this Agreement or to modify any part thereof, it shall notify the other party in writing no less than sixty (60) nor more than seventy–five (75) days prior to the end of said three–year period or the end of any subsequent one–year period that the party giving such notice desires either to terminate the Agreement at the end of such period or to negotiate amendments or changes of the terms or provisions thereof.

*Kaufman,* at 1106.

We note that this clause is similar to the one in the contract here at issue, *except* that it does not deal with the

---

[1]This second sentence provides: "Either the Union or the Employers, if such party has given notice of intent to modify this Agreement, may terminate this Agreement by written notice any time after April 30, 1983."

rights of the parties after a notice to modify is given. The *Kaufman* court held that the clause which requires a notice to modify prevented automatic extension of the agreement.

> [T]he structure of the clause is such that notice to terminate and notice to modify are functionally equivalent in the extension clause. As a result, the most logical and defensible interpretation of the duration clause is that either event, notice to modify or notice to terminate, serves as a condition or limitation on the extension of the agreement. We hold, therefore, that the duration clause is unambiguous and must be read so that notice to modify prevents automatic extension of the agreement in this case.
>
> . . . Under the Company's view, the Union would have no recourse but to accept extension of the present agreement if the parties were unable to agree on modification. The Company would have the unilateral power to reject proposed changes without fear of Union reprisal for its recalcitrance.

*Kaufman,* at 1109. It is important to note that the *Kaufman* court expressly distinguished the case of *International Union of Operating Eng'rs, Local 181, v. Dahlem Constr. Co.,* 193 F.2d 470, 473 (6th Cir. 1951). In that case, the duration clause at issue provided:

> "This agreement shall be in full force and effect until the first day of July, 1949. Should either party hereto give written notice during the month of March, 1949, of a desire to modify any of the terms and provisions of this contract, negotiations will be entered into by the parties hereto for the renegotiation of this agreement. Should such notice of a desire to modify the terms of this agreement be given by either party to the other, then this agreement shall remain in full force and effect until modified by a new agreement resulting from the negotiations."

The *Dahlem* court held that the clause acted to extend the terms of the contract. The *Kaufman* court indicated agreement with this decision "because of the fact that the agreement explicitly stated that the contract was to remain in effect until a new one was reached." *Kaufman,* at 1111.

It appears that the duration clause in *Dahlem* is more similar to the case at bar than the clause in *Kaufman* and thus this contract remains in effect after Wixson's notice.

■ In construing contract provisions,

The intention of the parties is to be gathered from the entire instrument and, if possible, by allowing each part of the contract to have some effect. *Safeco Ins. Co. v. McManemy,* 72 Wn.2d 211, 432 P.2d 537 (1967); *Hollingsworth v. Robe Lumber Co.,* 182 Wash. 74, 45 P.2d 614 (1935) . . .

*Neiffer v. Flaming,* 17 Wn. App. 443, 447, 563 P.2d 1300 (1977). *See also Arizona Laborers Trust Fund, Local 395 v. Conquer Cartage Co.,* 753 F.2d 1512 (9th Cir. 1985). To give any effect to the second sentence, the termination clause here must be construed to mean that the contract is not terminated by the giving of a notice of intent to modify, but rather that the contract is extended during the negotiations with the right to terminate *by the party giving the notice* to modify.[2] Such a construction eliminates the problems inherent in the duration clause in *Kaufman. See also Valmac Indus. v. Chauffeurs, Local 878,* 261 Ark. 253, 547 S.W.2d 80 (1977). Wixson could have reserved a right to terminate after April 30 by giving notice of intent to modify 60 days prior to that date. He did not do so.

Furthermore, it is undisputed that Wixson continued to treat the agreement in effect after April 30, 1983 by filing reports to the Trusts for the months of May, June and July, 1983, and by specifically advising the Union that Wixson considered the agreement terminated as of July 6. It is obvious from the letter seeking termination of the agreement as of July 6 that Wixson recognized the agreement was still in effect up to that date. That position is inconsistent with Wixson's contention that the agreement had previously terminated on April 30, 1983. *See Kennedy*

---

[2]Again, the second sentence of the bargaining agreement provides: "Either the Union or the Employers, if *such* party had given notice of intent to modify this Agreement, may terminate this Agreement by written notice any time after April 30, 1983."

*v. Weyerhaeuser Timber Co.*, 54 Wn.2d 766, 768, 344 P.2d 1025 (1959), which stated:

> In construing a contract, the intention of the parties must control, and the interpretation which the parties to a contract have placed on it will be given great, if not controlling weight.

(Citations omitted.)

Wixson's argument that his letter of March 6 was a notice of its intent to modify is not well founded. To the contrary, it was clearly a reply to the Union's notice of intent to modify and nothing else.

Accordingly, we hold that the termination clause is not ambiguous and that the agreement remained in effect, notwithstanding the notice of intent to modify given by the Trusts. Wixson's motion for summary judgment should have been denied and the Trusts' motion for partial summary judgment should have been granted. The decision of the trial court is reversed and the case is remanded for further proceedings consistent herewith.

DORE and HOLTE, JJ. Pro Tem., concur.