[No. 42584-6-I. Division One. August 2, 1999.]

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, *Respondent*, v. NORTHWEST YOUTH SERVICES, *Defendant*, PAUL C. RITCHIE, ET AL., *Appellants*.

*Douglas R. Shepherd* and *Patricia S. Woodall* of *Shepherd Abbott & Woodall*, for appellants.

*Robert J. Roche* of *Bullivant Houser Bailey Pendergrass & Hoffman*, for respondent.

COLEMAN, J. — Connie LaValley sued her therapist, Paul Ritchie, and Northwest Youth Services (NWYS), Ritchie's employer, alleging that Ritchie had entered into an improper sexual relationship with her.[1] National Union Fire Insurance Company, NWYS's insurer, then commenced this declaratory judgment action, contending that it had no duty to defend or indemnify Ritchie and NWYS on LaValley's claims. National Union argued that its insurance policies provided coverage for NWYS employees only when they were acting within the scope of their employment and that the trial court in the liability action had determined that Ritchie's actions were outside the scope of his employment when it dismissed LaValley's claims against NWYS that were based on vicarious liability. Thus, National Union argued, its policies did not cover Ritchie's conduct, and LaValley was collaterally estopped from relitigating this issue. The trial court agreed. The court also concluded that the question of National Union's duty to indemnify NWYS on claims that had been dismissed was moot.

LaValley and Ritchie appealed. We find that the trial court correctly interpreted the provisions limiting coverage under NWYS's insurance contracts and properly applied the doctrine of collateral estoppel to determine that Ritchie was not covered by the agreements. We also find that the issue of National Union's coverage of claims that have been dismissed is moot. We affirm.

## FACTS

National Union provided general liability coverage to NWYS when Ritchie was an NWYS employee. NWYS is designated as the named insured in its policies. The policies provide that employees other than executive officers are also insureds "but only for acts within the scope of

---

[1]Facts relevant to the liability action are set forth in *LaValley v. Ritchie*, No. 42251-1-I (Wash. Ct. App. May 24, 1999).

their employment."[2] In moving for summary judgment against Ritchie, National Union argued that the dismissal of LaValley's vicarious liability claims depended upon a determination that Ritchie's conduct was outside the scope of his employment. National Union argued that its insurance policies covered NWYS employees only when they were acting within the scope of their employment and that LaValley was collaterally estopped from relitigating this issue. The trial court agreed, ruling that National Union was not obligated to defend or indemnify Ritchie on LaValley's claims.

LaValley moved for partial summary judgment against National Union, seeking coverage of her claims against NWYS. The trial court granted partial summary judgment to LaValley, finding that National Union had a duty to provide coverage on claims that had not been dismissed.[3] The court ruled, however, that the issue of National Union's obligation to indemnify NWYS on claims that had been dismissed in the liability action was moot.[4]

In a separate appeal, LaValley challenged the dismissal of her claims against NWYS. A panel of this court recently affirmed that ruling in *LaValley v. Ritchie*, No. 42251-1-I (Wash. Ct. App. May 24, 1999).

## DISCUSSION

█ We review a grant of summary judgment de novo. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996).

---

[2]In addition, the policies provide that for an organization other than a partnership or a joint venture "executive officers and directors are insureds, but only with respect to their duties as [the organization's] officers or directors. . . . [S]tockholders are also insureds, but only with respect to their liability as stockholders."

[3]LaValley's remaining claim against NWYS was later dismissed. *See LaValley v. Ritchie*, No. 42251-1-I (Wash. Ct. App. May 24, 1999) (affirming dismissal of LaValley's negligent supervision claim).

[4]The trial court ordered that "[a]ll issues related to National Union's duty to indemnify Northwest Youth Services for any judgment entered . . . in favor of LaValley for claims dismissed by the trial court on November 15, 1995[,] are moot, unless or until reversed by a higher court."

Coverage of Claims Against Ritchie

■ The appellants argue that Ritchie's coverage under the insurance contracts was not limited to acts within the scope of his employment at NWYS, and thus the trial court erred in giving preclusive effect to the vicarious liability decision. The appellants contend that an exclusion to the contracts' professional liability endorsements amends the definition of an insured under the policies and provides for coverage of Ritchie's conduct. We review the interpretation of an insurance contract de novo. *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 160, 856 P.2d 1095 (1993).

■ The terms of an insurance contract must be given their usual, ordinary meaning unless the entirety of the agreement demonstrates a contrary intent. *Safeco Ins. Co. v. McManemy*, 72 Wn.2d 211, 212, 432 P.2d 537 (1967); *see also Mutual of Enumclaw*, 122 Wn.2d at 160 ("Policies are 'given a fair, reasonable, and sensible construction[.]' ") (quoting *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988)). If a contractual provision is ambiguous, it must be construed against the insurer even though the insurer may have intended another meaning. *See Safeco Ins. Co.*, 72 Wn.2d at 213.

NWYS's policies specifically exclude coverage of claims arising out of the provision of or failure to provide health care services. But under the liability endorsements, employees are covered for professional malpractice. The endorsements provide coverage

> on behalf of the Insured [for] all sums which the Insured shall become legally obligated to pay as damages because of:
>
> a) any negligent act, error, or omission arising out of the performance of professional services for others in the practice of the Insured's business described in the declarations.
>
> b) any liability that may arise based solely on the negligent acts, errors, or omissions of any employee of the Named Insured in the performance of professional services to others, for which the Named Insured may be held liable.

The endorsements also provide that "[a]ll other terms,

conditions and exclusions remain the same." Nevertheless, the appellants argue that coverage of employees under the endorsements is not limited to acts within the scope of their employment. The endorsements provide:

The following additional exclusions apply:

. . . .

(g) to licentious, immoral or sexual behavior intended to lead to or culminating in any sexual act. However, notwithstanding the foregoing, the Insured shall be protected under the terms of this policy as to any claim upon which suit may be brought against him, by reason of any alleged licentious, immoral or sexual behavior by an Insured unless the judgment or final adjudication thereof adverse to the Insured shall establish that acts of active and deliberate, licentious, immoral or sexual behavior committed by the Insured with actual licentious or immoral purpose and intents were material to the cause of actions so adjudicated[.]

The appellants contend that the exception in exclusion (g) indicates that the parties intended to provide for coverage when, as here, the malpractice claim is based on an allegation of sexual misconduct without licentious or immoral intent.[5] We disagree.

██ ██ "Exclusion clauses do not grant coverage; rather, they subtract from it." *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group*, 37 Wn. App. 621, 627, 681 P.2d 875 (1984). The endorsements themselves provide professional liability coverage "on behalf of the Insured." There is no indication that the endorsements add coverage for employees acting outside the scope of their employment. Our Supreme Court has stated:

Endorsements must be read together with the policy to determine the intent of the parties. An endorsement becomes

---

[5]In the suit against Ritchie and NWYS, LaValley alleged that Ritchie committed malpractice by responding inappropriately to the feelings she had transferred to him, mishandling a phenomenon known as transference. *See LaValley*.

a part of the insurance contract even if the result is a new and different contract. As endorsements are later in time, they generally control over inconsistent terms or conditions in a policy.

An endorsement attached to a policy, which expressly provides that it is subject to the terms, limitations and conditions of the policy, must be read with the policy and will not abrogate or nullify any provision of the policy unless it is so stated in the endorsement.

*Transcontinental Ins. Co. v. Public Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 462, 760 P.2d 337 (1988); *see also Safeco Ins. Co.*, 72 Wn.2d at 213 ("[E]ach part [of the contract], if possible, should be so construed that all parts thereof shall have some effect."). The coverage provided to NWYS employees in the liability endorsements is consistent with the policies' exclusion of acts outside the scope of employment and does not negate that exclusion. Moreover, contrary to the appellants' assertions, it is reasonable to conclude that the parties did not intend to cover claims arising out of the sexual misconduct of NWYS therapists, since such malpractice claims represent a significant and identifiable risk to the insurer. *Cf. American Home Assurance Co. v. Cohen*, 124 Wn.2d 865, 877-78, 881 P.2d 1001 (1994) (policy limit on sexual misconduct claims does not conflict with public policy); *accord Chicago Ins. Co. v. Manterola*, 191 Ariz. 344, 955 P.2d 982, 984-86 (Ct. App. 1998) (policy excluding coverage of sexual misconduct based on the mishandling of the transference phenomenon does not conflict with public policy). We find that the trial court correctly concluded that the endorsements do not provide coverage in this case.

The appellants also contend that the trial court erred by giving preclusive effect to the dismissal of LaValley's vicarious liability claims, arguing that a grant of summary judgment does not constitute a final judgment on the merits if an appeal is pending. This court has since affirmed the decision dismissing the vicarious liability claims, and thus the decision in *LaValley v. Ritchie*, No. 42251-1-I (May 24, 1999) makes this argument moot. We reiterate, however,

that a grant of summary judgment constitutes a final judgment on the merits and has the same preclusive effect as a full trial of the issue. *Lee v. Ferryman*, 88 Wn. App. 613, 622, 945 P.2d 1159 (1997); *see also Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 264, 956 P.2d 312 (1998) (an appeal does not suspend the collateral estoppel effect of a judgment entered after trial).

The appellants also contend that the application of collateral estoppel in this case will work an injustice. We disagree. Under the doctrine, a party is estopped from relitigating an issue decided in a previous suit if the issue was necessary and essential to the prior judgment and if

(1) The issue decided in the prior adjudication is identical with the issue now before the court;

(2) There was a final judgment on the merits;

(3) The party against whom the plea is now asserted is a party or is in privity with a party to the prior adjudication; and

(4) The application of the collateral estoppel doctrine will not work an injustice against the party against whom the doctrine is applied.

*Wear v. Farmers Ins. Co.*, 49 Wn. App. 655, 659, 745 P.2d 526 (1987) (quoting *San Telmo Assocs. v. City of Seattle*, 108 Wn.2d 20, 22-23, 735 P.2d 673 (1987). The purpose of the test set forth above is to ensure that the party against whom the doctrine is to be applied "has had a 'full and fair opportunity' to litigate the issues." *See Fahlen v. Mounsey*, 46 Wn. App. 45, 50, 728 P.2d 1097 (1986). The appellants mistakenly attempt to demonstrate the injustice of preclusion in the instant case by rearguing the issue of whether NWYS should be vicariously liable for Ritchie's actions. But the appellants had a full opportunity to litigate this issue in the liability action, and thus the test for the application of estoppel in this case has been met. *See Nielson*, 135 Wn.2d at 262 ("The purpose of the doctrine is to promote the policy of ending disputes. . . . [T]he 'doctrine of collateral estoppel is well-known to Washington law as a means

of preventing the endless relitigation of issues already actually litigated by the parties and decided by a competent tribunal.' ") (quoting *Reninger v. Department of Corrections*, 134 Wn.2d 437, 449, 951 P.2d 782 (1998) (citations omitted)); *see also Thompson v. Department of Licensing*, 91 Wn. App. 887, 897, 960 P.2d 475 (1998), *review granted*, 137 Wn.2d 1013 (1999) ("The purpose of the doctrine is to end disputes, promote judicial economy, and prevent harassment of and inconvenience to the litigants."). We find that the trial court properly applied the doctrine in the instant case.

Coverage of Claims Against NWYS

■ In their briefing, the appellants contended that the issue of National Union's obligation to cover claims against NWYS that had been dismissed was not moot because the insurer's duty to defend continues on appeal. In oral argument, counsel for the appellants conceded that the recent decision in *LaValley v. Ritchie*, affirming the dismissal of these claims rendered the issue moot absent its reconsideration or further review by the Supreme Court. We find, however, that in refusing to adjudicate the issue of coverage for NWYS, the trial court correctly declined to decide an issue that was moot and that did not implicate matters of continuing and substantial public interest. *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994) (citing *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). LaValley's argument against mootness depended upon the possibility of an appellate reversal and the potential that her claims against NWYS would be revived. If, on further appeal, the decision is reversed, the inquiry on coverage may be reopened. But as discussed above, the trial court in the liability action entered a final order dismissing the claims, and thus we find that the court in this action did not err in refusing to decide a controversy that had become moot.

National Union further argues that LaValley lacked standing to clarify NWYS's rights under the insurance

agreements.[6] In initiating and litigating this coverage action against NWYS, Ritchie, and LaValley, National Union acknowledged that LaValley had the right to determine the extent of National Union's coverage on claims that were still before the trial court in the liability action.[7] National Union argued, however, that LaValley did not have standing to assert coverage under the agreement. Because we find that any issue regarding coverage of NWYS on claims that have been dismissed is moot and that the trial court correctly declined to reach the merits of LaValley's coverage argument, we do not address this additional contention.[8]

For the reasons set forth above, we affirm.

AGID, A.C.J., and BAKER, J., concur.

Review denied at 139 Wn.2d 1020 (2000).

---

[6]National Union raises this argument only with regard to the issue of NWYS's coverage. National Union does not contend that LaValley lacked standing to appeal or defend against the judgment denying coverage for Ritchie. We note that Ritchie assigned his rights to LaValley by agreement, and counsel for LaValley appeared on behalf of both LaValley and Ritchie in response to National Union's summary judgment motion.

[7]National Union argued:

Miss LaValley simply only has the right under the declaratory judgment action to bring a claim to determine coverage between the insured and the insurance company. Those issues of coverage have been determined.

Regarding the one remaining claim that is in the underlying lawsuit, National Union is providing full coverage[.]

[8]We also note that LaValley provided no argument in response to National Union's assertions, contending only that she was a proper party to the declaratory judgment action under *Government Employees Ins. Co. v. Woods*, 59 Wn.2d 173, 367 P.2d 21 (1961).